David Kusnetz, J.
The (Hidden Company, Durkee Famous Foods Division (hereinafter referred to as “ (Hidden'’), upon which General Warehousemen’s Union, Local 852, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO (hereinafter referred to as the “Union”), served a notice to arbitrate six separate disputes *702 therein set forth before the New York State Board of Mediation, has petitioned this court, pursuant to section 1458 of the Civil Practice Act, to stay such arbitration ‘ ‘ upon the ground that the alleged disputes sought to be arbitrated are not arbitrable under the collective bargaining agreement between the parties to this proceeding.”
The parties to this proceeding executed a collective bargaining agreement on March 13, 1956, effective from December 1, 1955, to November 30, 1957. Therein (Hidden recognized the Union as the exclusive representative of all its hourly paid production, maintenance and service employees at the plant facilities in Elmhurst, Long Island, for the purposes of collective bargaining with respect to rates of pay, hours of employment, fringe benefits and other terms and conditions of employment (art. I). In article XXII the parties agreed that the aforesaid collective bargaining agreement “ expresses the full and complete understanding and obligations of the parties on the subject of wages, method of payment, hours of employment, working conditions, and other conditions of employment including welfare, fringe and retirement benefits, and was freely arrived at through the processes of collective bargaining ” and that said agreement “ shall remain in full force and effect until November 30, 1957, and from year to year thereafter until either party hereto notifies the other party not less than sixty (60) days prior to the expiration of this Agreement or any extension hereof, that such party elects to terminate or modify this Agreement on its expiration date.”
On May 16, 1957, all of (Hidden’s employees at its Elmhurst plant were given notice that the operation thereof would be discontinued within several months. On September 16, 1957, (Hidden notified the Union, pursuant to article XXII of the collective bargaining agreement of its intention to terminate it on its expiration date, November 30, 1957. This notice, according to (Hidden, was given as the result of the resolution of its board of directors on April 19,1957, to discontinue the operation of its plant at Elmhurst in the Fall of 1957, in order to effect economic savings to be achieved by the consolidation of the discontinued operations in the plants located at Bethlehem, Pennsylvania ; Louisville, Kentucky; Chicago, Illinois and Berkeley, California.
Representatives of (Hidden and the Union met on October 30, 1957, at which time they were informed that the operations at Elmhurst would be partially discontinued on November 1, 1957, pursuant to the notice given in May of that year and, therefore, the employment of a substantial portion of the workers covered by the collective bargaining agreement would be terminated on *703 that date and that some of the employees would be continued in employment after November 1, 1957, to assist in moving stock and materials to the new plant in Pennsylvania and in the maintenance of the Elmhurst plant until such stock and materials were removed. The employment of all employees covered by the collective bargaining agreement was terminated on or before November 30, 1957, the expiration date thereof.
The first three issues set forth in the Union’s notice of intention to arbitrate may be summarized as follows: Whether the collective bargaining agreement between the parties provides for (1) a welfare plan, (2) a pension plan and (3) a group insurance plan which create property rights for the employees which were breached by the discontinuance of Hidden’s plant at Elmhurst, without first offering to each employee continued employment with full seniority. The remaining three issues sought to be arbitrated are (4) whether the discontinuance of the Hidden plant at Elmhurst without offering to each employee continued employment with full seniority was a breach of the collective bargaining agreement; (5) whether such discontinuance was designed to avoid, evade, disrupt and breach Hidden’s contractual obligations to the Union and to its employees and to prevent collective bargaining in violation of law; and (6) whether the employees covered by the collective bargaining agreement were discriminated against, solely by reason of their Union status and affiliation and were denied equal treatment with employees in other categories by being barred from continued employment with full seniority or denied severance pay as an alternative.
Section 2 of article XX of the collective bargaining agreement sets forth a five-step procedure for the settlement of disputes terminating with the following arbitration clause: ‘ ‘ Any question, grievance or dispute arising out of and involving the interpretation and application of the specific terms of this Agreement * * * shall, at the request of either party, be referred to the New York State Mediation Board for arbitration.” (Emphasis supplied.) Art. XX, § 2, subd. [e].)
It is the position of Hidden that none of the alleged disputes tendered by the Union for arbitration arises out of and involve “ the interpretation and application of the specific terms ” of the collective bargaining agreement with respect to which the parties thereto signified therein their willingness to resort to arbitration (art. XX, § 2, subd. [e]). The Union contends, however, that the very question of arbitrability of the tendered disputes is referable to the arbitrator for decision under what they term to be a “ sweeping ” arbitration clause similar to that *704 involved in Matter of Teschner (Livingston) (285 App. Div. 435, affd. 309 N. Y. 972).
In Teschner, however, the arbitration provision used not only the phrase ‘ ‘ any and all controversies arising out of the contract, ’ ’ but also ‘' any and all controversies in connection with the contract.” In the case at bar the arbitration provision does not contain the phrase ‘' any and all controversies in connection with the contract.” It is this additional phrase considered in Teschner which rendered the arbitration provision therein broader than that contained in the instant collective bargaining agreement. The difference between Teschner and the case at bar is high-lighted by a reference to the arbitration clause which was contained in Matter of Lipman (Haeuser Shellac Co.) (289 N. Y. 76). There the court stated at page 80:" Where, however, as here, the language of the provision providing for arbitration uses not only the phrase ' any and all controversies arising out of the contract ’ but also ' any and all controversies in connection with the contract, ’ this language would appear sufficiently broad to express the intention of the parties to include within the exclusive jurisdiction of the arbitrators as a general rule all acts by the parties giving rise to issues in relation to the contract, except the making thereof.”
It is the opinion of this court, therefore, that the question of arbitrability of the tendered issues has not been made referable to the arbitrator for decision by the arbitration clause presented in the case at bar, and that it is for the court to determine, and not the arbitrator, whether the collective bargaining agreement contains a provision for arbitration of the alleged disputes here tendered by the Union. In the exercise of that jurisdiction the court must determine whether such disputes in fact exist. (Matter of International Assn. of Machinists [Cutler-Hammer, Inc.), 271 App. Div. 917, affd. 297 N. Y. 519; Matter of Miller Art Co. [Firestone], 4 A D 2d, 1032.)
No one is under duty to resort to arbitration unless by clear language he has so agreed. (Matter of Lehman v. Ostrovsky, 264 N. Y. 130, 132.) " A provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract is now' enforcible. The contract, however, must be to arbitrate the precise matter as to which arbitration is sought. Upon this depends both the jurisdiction of the arbitrator and the power of the court.” (Matter of Kelly, 240 N. Y. 74, 78.)
In the case at bar the Union has not been able to point to any specific term or provision in the collective bargaining agreement in question or by reference to the welfare, pension and *705 group insurance plans which are part of this, record, requiring (Hidden to continue operations at Elmhurst or to continue the employment of any employee for any period of time, certainly not beyond the expiration date of the agreement, or to offer to each employee employment with full seniority after the discontinuance of such operations, or as an alternative severance pay, or in any way dealing with alleged property rights for employees whose employment has been terminated by (Hidden’s discontinuance in good faith of its operations at Elmhurst. Under these circumstances it cannot be said that the Union has met. its- burden of establishing that a bona fide dispute or real ground of claim exists for arbitration within the meaning of the arbitration clause set forth in the collective bargaining agreement. (Matter of Essenson [Upper Queens Med. Group], 307 N. Y. 68, 72.) As was stated by Chief Judge Cabdozo in Matter of Marchant v. Mead-Morrison Mfg. Co. (252. N. Y. 284, 299): “ The question is one of intention, to be ascertained by the same tests that are applied to contracts generally. Courts are not at liberty to shirk the process of construction under the empire of a belief that arbitration is beneficient any more than they may shirk it if their belief happens to be the contrary. No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the extent that he has signified his willingness.”
It may be noted that the Union does not claim that any specific term set forth in either the welfare or pension plans contained in the collective bargaining agreement has not been complied with by (Hidden; nor that (Hidden has failed to comply with the group life insurance plan which was set up without any provision therefor in the collective bargaining agreement. The basis of the Union’s claim is that because of the discontinuance of the operations at Elmhurst and the termination of employment thereat, the employees covered by the collective bargaining agreement can no longer qualify for or become entitled to benefits under those plans in the future. However, no provision was made in the collective bargaining agreement relating to, the continuance or discontinuance of operations at Elmhurst; for the continuance of employment of the employees covered by the said agreement for any period of time other than the expiration date thereof; or requiring the- company to. offer to each employee continued employment with full seniority in the event of discontinuance. It cannot, therefore, be said that the disputes the Union claims to have with (Hidden are referable to arbitration under a clause which requires arbitration only with respect to “ specific terms ” of a collective bargaining agreement.
*706 Moreover, so far as “ dispute ” No. 5 tendered by the Union poses the issue that Glidden’s termination of operations at Elmhurst was to prevent collective bargaining between it and the Union in violation of law and “ dispute ” No. 6 presents the issue that the employees covered by the collective bargaining agreement have been discriminated against solely by reason of their Union status and affiliation, these are unfair labor practices under the Labor Management Relations Act of 1947 (U. S. Code, tit. 29, § 158). Over disputes involving such practices it has been held that the National Labor Relations Board has exclusive jurisdiction. (Weber v. Anheuser-Busch, 348 U. S. 468; Garner v. Teamsters Union, 346 U. S. 485.) Matters of that nature cannot be the subject of arbitration or State court action. (National Labor Relations Bd. v. International Union, 194 F. 2d 698; Matter of Stowe [Aircooled Motors], 204 Misc. 228, 230; Matter of United Steelworkers [Lennox Furnace Co.], 206 Misc. 193,197-198, appeal dismissed 1 A D 2d 932; Matter of Dumont Labs., [Baker], 154 N. Y. S. 2d 394, 395.)
It follows from all of the foregoing that Glidden’s motion to stay arbitration must be granted, whatever other remedies the Union may have with respect to the alleged disputes.
Submit order.