UNITED STEELWORKERS OF AMER-
ICA (AFL–CIO), LOCAL UNION
NO. 4264, Plaintiff,

v.

NEW PARK MINING COMPANY,
Defendant.

No. C–26–58.

United States District Court
D. Utah, Central Division.

Sept. 3, 1958.

Additional Opinion Dec. 16, 1958.

Algerdas N. Cheleden, Los Angeles, Cal., A. Wally Sandack (of Draper, Sandack & Draper), Salt Lake City, Utah, for plaintiff.

Calvin A. Behle, Keith Taylor (of Dickson, Ellis, Parsons & McCrea), Salt Lake City, Utah, for defendant.

CHRISTENSON, District Judge.

On September 27, 1957, New Park Mining Company, a corporation, discontinued its mining operations and discharged approximately one hundred seventeen employees represented by the plaintiff union. On October 3, 1957 defendant entered into a leasing contract, referred to as the "Mayflower Lease", with a number of these former employees for the working of its mine. The collective bargaining agreement between plaintiff union and the defendant corporation by its terms did not expire until June 30, 1958.

Relying upon the jurisdiction of this Court conferred by Section 301 of the Labor-Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185, plaintiff on March 6, 1958 filed this action for the purpose of compelling the defendant company to arbitrate with reference to the discharge of said employees; for a declaration that the so-called "Mayflower Lease" is invalid and subordinate to the prior collective bargaining agreement; for judgment in favor of the plaintiff union as trustee for the defendant's employees as a class for full salary and back pay, including vacation pay from September 27, 1957 through June 30, 1958; and for costs and general relief. In its answer the defendant admits that it has refused to arbitrate the grievances asserted by the union but denies that plaintiff is entitled to relief. It also has moved for summary judgment, and the latter matter is before me for decision.

It is now firmly settled that performance of an agreement to arbitrate may be specifically enforced. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; see also Local 19, Warehouse, Processing and Distributive Workers Union, Retail Wholesale and Dept. Store Union v. Buckeye Cotton Oil Co., 6 Cir., 1956, 236 F.2d 776, certiorari denied 354 U.S. 910, 77 S.Ct. 1293, 1 L.Ed.2d 1428; Butte Miners' Union No. 1 of International Union of Mine, Mill and Smelter Workers v. Anaconda Company, D.C.D.Mont.1958, 159 F.Supp. 431; cf. Latter v. Holsum Bread Co., 108 Utah 364, 160 P.2d 421.

However, recourse to the collective bargaining agreement between the parties, which agreement is set out as an exhibit to the complaint, and also as an exhibit to the answer, is dispositive of this phase of the case. The only reference therein to arbitration is as follows:

> "Step 3: Failing satisfactory adjustment, the staff representative of the Union and the Grievance Committee and the general manager and his representatives shall make a final effort to settle the grievance within five (5) days from the signing of the written statement of the issues, before resorting to (c) below.
>
> "(c) Before resorting to economic force the Company and the Union shall have completed the procedure provided for herein and shall further make an effort to agree to dispose of the difference or grievance by means of arbitration."

It is true that Exhibit B, "Procedural Agreement for Job Evaluation", by reference incorporated into the collective bargaining agreement, contains detailed provision with regard to the procedure to be followed " * * * in regard to the review of job classification and job descriptions * * *", including a stipulation that such matters shall be binding, and that in event of any such arbitration the parties will utilize the services of the American Arbitration Association. Article III, § 1(f). It is manifest that the latter provisions concerning review of job descriptions and job classifications do not suggest either expressly or by implication that with respect to any other matters there shall be arbitration or that it shall be final and binding. As to these other grievances, the arbitration provision is only that the company and the union shall " * * * make an effort to agree to dispose of the difference or grievance by means of arbitration."

Is an undertaking to make an effort to agree to dispose of questions or grievances by means of arbitration such a one as to be specifically enforceable? I think not. It is not so by operation of the general federal law with regard to arbitration, since contracts of employment are specifically excluded. 9 U S.C. A. § 1. There appears no reason why the basic principle applicable to other claims for specific performance should not apply here to preclude the remedy where there is no agreement for performance which is reasonably susceptible of enforcement. United Furniture Workers of America v. Little Rock Furniture Mfg. Co., D.C.E.D.Ark., W.D., 1957, 148 F. Supp. 129; Riverdale Fabrics Corp. v. Tillinghast-Stiles Company, 306 N.Y. 288, 118 N.E.2d 104, 31 A.L.R.2d 867.

From some contracts there may be implied the adoption of general or other arbitration procedures, and certainly the Court should be favorably inclined toward the resolution of labor disputes by this means. Marine Transit Corporation v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282; see also annotation, "Contract providing that it is governed by or subject to rules or regulations of a particular trade, business or association as incorporating agreement to arbitrate." 41 A.L.R.2d 872. But we have found no case where the language of a contract is less susceptible to an implication that other arbitration procedures were intended and we have found no case which more clearly negates the idea that enforceable arbitration was contemplated than the case at bar. The fact that there was included an enforceable arbitration provision concerning job descriptions and classifications only underscores the intention of the parties that there should be no enforceable, final or binding arbitration with respect to other matters.

It remains to inquire whether relief other than specific performance of the alleged agreement to arbitrate may be granted in this action. Section 185, 29 U.S.C.A. provides in part as follows:

> "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any dis-

trict court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

If the collective bargaining agreement itself was violated by the company in terminating its operations and entering into the lease agreement in a way basically affecting the rights of the union itself, could this Court grant relief under section 185 notwithstanding that there was no enforceable agreement for arbitration? It is true that the individual rights of the discharged employees might be affected by any such determination, but it would seem appropriate for the union itself to object to the effectual termination of its contract with the employer through such means if there are no other provisions of law limiting the application of section 185. See annotation, "Substitution of independent contractor for employees as violation of collective labor contract," 57 A.L.R.2d 1399. See also New Bedford Defense Products Division of Firestone Tire & Rubber Co. v. Local No. 1113 of International Union Automobile, Aircraft and Agricultural Implement Workers of America, D.C.D.Mass.1958, 160 F.Supp. 103, affirmed, 1 Cir., 258 F.2d 522.

If the cessation of operations and the substitution of a leasing arrangement were in good faith, I am of the opinion that there would be no violation of the contract involved. See Amalgamated Association of Street, Electric Ry. and Motor Coach Employees ' of America, Division 1326 v. Greyhound Corp., 5 Cir., 1956, 231 F.2d 585, 57 A.L.R.2d 1394; Local Union No. 600, United Automobile Aircraft & Agricultural Implement Workers of America v. Ford Motor Co., D.C.E.D.Mich., S.D., 1953, 113 F.Supp. 834; American Brake Shoe Co. v. National Labor Relations Board, 7 Cir., 1957, 244 F.2d 489; Mount Hope Finishing Co. v. National Labor Relations Board, 4 Cir., 1944, 211 F.2d 365; National Labor Relations Board v. Houston Chronicle Pub. Co., 5 Cir., 1954, 211 F.2d 848; National Labor Relations Board v. New Madrid Mfg. Co., 8 Cir., 1954, 215 F.2d 908; National Labor Relations Board v. Adkins Transfer Co., 6 Cir., 1955, 226 F.2d 324, and the cases cited in the annotation at page 57 A.L.R.2d 1399. The agreement between the New Park Mining Company and the United Steelworkers in effect so provided:

"XIX. Management Prerogative. The right to hire, to discharge and to manage operations and the direction of the working forces are invested in the Company and the Union shall not abridge that right."

There are suggestions in the complaint that the discharge and lease were for the purpose of avoiding defendant's obligations under the collective bargaining agreement. This, of course, could be so and yet the action might represent the good faith decision of management based also upon appropriate considerations; but if the action were a mere subterfuge for the purpose of preserving the benefits of the employer-employee relationship and avoiding the consequences of the collective bargaining agreement founded thereon, the situation

would be different. Responsibility for unfair labor practices cannot be avoided by reorganizations, transfers, or other disguised continuances. National Labor Relations Board v. Coal Creek Coal Co., 10 Cir., 1953, 204 F.2d 579; Southport Petroleum Co. v. National Labor Relations Board, 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718, rehearing denied 315 U.S. 827, 62 S.Ct. 637, 86 L.Ed. 1223.

Even though the complaint were deemed sufficient to raise the question of subterfuge, I am of the opinion that summary judgment should go against the plaintiff for the further reason that the National Labor Relations Board would have exclusive jurisdiction to determine any point that has not been either disposed of above or precluded by the present state of the pleadings.

Section 158 of Title 29, U.S.C.A., makes it an unfair labor practice, among other things, to refuse to bargain collectively with representatives of the employees. Subsection (d) provides that for the purpose of this section where there is in effect a collective bargaining contract covering employees in an industry affecting the commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract unless the party desiring such termination or modification complies with certain conditions, which, according to the present record, were not complied with in this case.

The problem of where the jurisdiction of the N.L.R.B. leaves off and the jurisdiction of the courts begins was considered in Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 164, 98 L.Ed. 228. In that case the employer sought an injunction in a state court to prohibit picketing by the union. After pointing out that the act "leaves much to the states, though Congress has refrained from telling us how much," the court went on to declare that this type of action was within the exclusive jurisdiction of the N.L.R.B. The court pointed out that "the conflict lies in remedies, not rights. * * * But when two separate remedies are brought to bear on the same activity, a conflict is imminent." 74 S.Ct. 170.

This distinction was pointed out in United Const. Workers, Affiliated with United Mine Workers of America v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025, a tort action to recover damages for conduct which also constituted an unfair labor practice. State court jurisdiction was upheld. The court said that to the extent Congress prescribed preventative procedure against unfair labor practices the Garner case recognized that the act excluded conflicting state procedure to the same end (at page 665 of 347 U.S., at page 838 of 74 S.Ct.), but that where the act did not prescribe a remedy the state court had jurisdiction. See also International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030. The following cases have reiterated the distinction made in the Garner case: Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (action to enjoin work stoppage); Capital Service, Inc., v. National Labor Relations Board, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (state court enjoined picketing); United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 76 S.Ct. 559, 100 L.Ed. 941 (state court enjoined picketing); Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (state court mandatory injunction to force employer to bargain); Local Union 25 of Intern. Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. New York, New Haven & Hartford Railroad Co., 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166 (action in state court to enjoin union from conduct which interfered with operations of railroad).

The cases upon which plaintiff relies to sustain the jurisdiction of the Court generally are not inconsistent with the theory of the foregoing cases. On the contrary, most of them apply this con-

cept but in addition bring into play the related principle that where relief before the National Labor Relations Board would not be co-extensive with that available through the courts, no clear intent for federal pre-emption was indicated by Congress. International Ass'n of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018; International Union, United Automobile, Aircraft and Agricultural Implement Workers of America v. Russell, supra; Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510; Independent Petroleum Workers of New Jersey v. Esso Standard Oil Co., 3 Cir., 1956, 235 F.2d 401; Textile Workers Union of America v. Lincoln Mills of Alabama, supra; Local Union No. 600, United Automobile, Aircraft & Agricultural Implement Workers of America v. Ford Motor Co., supra; Amalgamated Association of Street Electric Ry. and Motor Coach Employees of America, Division 1326 v. Greyhound Corp., supra.

■ We do not consider that any of these cases demonstrate on the facts of the instant case that the jurisdiction of the National Labor Relations Board is other than exclusive on the question of improper termination of the contract. This question is not entirely free from doubt. Yet, it seems especially appropriate that the board should consider, in line with the general policy of the Labor-Management Act, whether the discontinuance of operations in form by an employer is in fact a good faith and legitimate decision of management, or whether it is in reality merely the termination of a collective bargaining agreement through subterfuge without taking the steps which by express provision of the act would be necessary to render the action something other than an unfair labor practice.

■ But there is an additional reason why a declaration on this matter may not be made by this Court on the present showing. The complaint asks for a decree declaring that the so-called "Mayflower Lease" of October 3, 1957, is in-

valid and subordinate and subject to the prior collective bargaining agreement of the parties dated July 1, 1956. No damages are sought on the part of the union in its own right. If we take the request on its face, that is, that plaintiff only wants a declaration of rights for itself, the case is moot. The contract by its terms expired on June 30, 1958. It would serve no purpose to curry this dead horse. Textile Workers Union of America v. Lincoln Mills of Alabama, supra. If the complaint is construed as one for an injunction to compel the defendants to reinstate the contract and to bargain collectively, we are without jurisdiction under the doctrine of the Guss case, supra.

The words of the Supreme Court in Weber v. Anheuser-Busch, Inc., supra, seem appropriate here (at page 481 of 348 U.S., at page 488 of 75 S.Ct.):

"We realize that it is not easy for a state court to decide, merely on the basis of a complaint and answer, whether the subject matter is the concern exclusively of the federal Board and withdrawn from the State. * * * But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."

Nor have facts been made to appear which would authorize the Court to grant relief by way of vacation or termination pay appropriate in individual suits. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., supra. The requisites of a class action have not been alleged even though the corresponding rule could be considered otherwise to apply. Fed.Rules Civ.Proc. rule 23, 28 U.S.C.A. On the present state

of the record jurisdiction does not exist on the basis of diversity and amount in controversy. 28 U.S.C.A. § 1332.

At a conference attended by counsel following the argument, it was reported to the Court that diversity did in fact exist between the parties plaintiff and defendant herein, and between the individual employees represented by plaintiff and the defendant. Plaintiff's counsel, upon becoming acquainted with the Court's tentative views on the matter, earnestly urged that even though jurisdiction might fail on other grounds, the theories of a class action or a trust theory might be sufficient on which to peg the case here. Under the present pleadings both theories appear to be clearly untenable. Indeed, it seems doubtful that further amendments would be helpful, since the difficulty appears to be more substantial than formal. See Rock Drilling, Blasting, Roads, Sewers, Viaducts, Bridges, Foundations, Excavations and Concrete Work on all Const., Hod Carriers', Bldg. and Common Laborers' Local Union No. 17 v. Mason & Hanger Co., 2 Cir., 1954, 217 F.2d 687; Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., supra.

However, I would dislike to see the decision, or its review, go off on a mere technical failure of pleading. Whether additional pleading would prove vital or not, it seems appropriate that, as it requests, plaintiff be afforded further opportunity to perfect its record as it believes it should be made. Plaintiff, therefore, is allowed ten days within which to file an amended complaint if it be so advised, at the expiration of which time the Court will either direct that summary judgment be entered consistent with the views herein expressed or set the matter down for further argument if any new pleading seems to authorize a different result.

### Additional Opinion.

Since filing my memorandum decision dated September 3, 1958 indicating the tentative view that the defendant's motion for summary judgment should be granted, but allowing leave for plaintiff to file an amended complaint, such amended complaint has been filed, and further authorities have been submitted.

The amended complaint contains two claims, the latter of which seeks vacation pay for union members and alleges diversity of citizenship as between the plaintiff union and the defendant corporation and that the amount in controversy exceeds $3,000. (This action was instituted prior to the time the amount for diversity jurisdiction was raised to $10,000. Public Law 85–554, July 25, 1958, 85 Cong., 72 Stat. 415, 28 U.S.C.A. § 1332).

Plaintiff's counsel now disaffirm any theory of class action, and state that they rely upon " * * * the theory of a trusteeship in which the union is the trustee for the employees and the union is the real party in interest, and this can be substantiated by a careful reading of Rock Drilling, Blasting, Roads, Sewers, Viaducts, Bridges, Foundations, Excavations and Concrete Work on all Const. Hod Carriers', Bldg. and Common Laborers' Local Union No. 17 v. Mason & Hanger Co.," 2 Cir., 1954, 217 F.2d 687, certiorari denied 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249. Rule 17(a), Fed. Rules Civ.Proc., 28 U.S.C.A., provides:

"Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States."

The plaintiff asserts that the fact that the union is not a member of the class which it purports to represent in its second claim does not defeat its standing

here, since it is a trustee or a party with whom or in whose name a contract has been made for the benefit of another, which by the rule above quoted is authorized to bring suit in its own name. Rule 17(a), however, is not a back door by means of which litigants may by-pass jurisdictional requirements. In the absence of some special statute granting jurisdiction, individual interests represented by a plaintiff under Rule 17(a) cannot be aggregated to make up the jurisdictional amount. Rock Drilling, Blasting, Roads, Sewers, Viaducts, Bridges, Foundations, Excavations and Concrete Work on all Const., Hod Carriers', Bldg. and Common Laborers' Local Union No. 17 v. Mason & Hanger, Co., supra. It is undisputed here that no single claim of any employee to vacation pay amounts to as much as $3,000.

■ Plaintiff also relies upon 29 U.S.C.A. § 185, apparently on the theory that read either alone or in connection with Rule 17(a) the amounts of the respective claims and the citizenship of the employees concerned become immaterial. If section 185 is applicable to suits brought by a union for wages or vacation pay of individual members, Rule 17(a) would not have to be looked to at all. But whether these provisions are considered together or separately, I am of the opinion that this court is without jurisdiction to grant relief as to such claims, or at least that no claim has been stated upon which it would be justified in granting relief.

To hold that purely individual claims of this nature could be reduced to judgment in this court in such an action as this would give rise to a host of practical, and some constitutional difficulties. It would be easy to spell out in a collective bargaining agreement numerous individual rights of employees which would attach upon subsequent hirings; and even in the absence of special provision all types of rights of employees under existing agreements could be urged by the union on the theory that it was trustee or litigation agent for its members. From neither standpoint does it appear possible that Congress intended that in a single action in a federal district court perhaps thousands of purely individual rights of all kinds connected with the employment could be decided without reference to citizenship or amounts in controversy. Such litigation might wholly involve state law, and other exclusively local considerations, bearing no substantial relationship to any federal statute or power. By the same token, if plaintiff's argument is extended to another logical application, the union could bring a separate suit for a single employee on a purely individual wage claim, trivial in amount and involving no diversity of citizenship, and with no significance from any standpoint which Congress properly could have considered.

Such practical and constitutional difficulties which these general examples suggest need not be further explored at this time because of a legal barrier with which we are first confronted. The Supreme Court of the United States reached a result wholly contrary to the plaintiff's position in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 which continues to stand as the law controlling upon this court. The dissenting opinion of Mr. Justice Douglas, concurred in by Mr. Justice Black expressed the view that it was a mistake not to allow the union to be the suing as well as the bargaining agency for its members as respects matters involving construction and enforcement of the collective bargaining agreement, even in respect of purely individual rights. The majority of the Court flatly rejected that idea. See also Silverton v. Valley Transit Cement Co., D.C.S.D.Cal., S.D., 1955, 140 F.Supp. 709, affirmed 9 Cir., 1957, 249 F.2d 409. Little comfort for plaintiff's position can be found in Rock Drilling, Blasting, Roads, Sewers, Viaducts, Bridges, Foundations, Excavations and Concrete Work on all Const., Hod Carriers' Bldg. and Common Laborers' Local Union No. 17 v. Mason & Hanger Co., supra. Food & Service

Trades Council v. Retail Associates, D.C. N.D.Ohio, W.D., 1953, 115 F.Supp. 221, favorable to plaintiff's views, was relied upon by the union when Westinghouse was before the lower court. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 3 Cir., 1954, 210 F.2d 623. However, the decision of the Supreme Court in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., supra, fully supported the rejection of the doctrine of the Ohio case by the Court of Appeals of the Third Circuit.

Defendant's motion for summary judgment as to each count set out in plaintiff's amended complaint is hereby granted for the reasons hereinabove, and in the September 3, 1958, decision stated.