Olga ZDANOK, John Zacharczyk, Mary A. Hackett, Quitman Williams and Marcelle Kreischer, Plaintiffs,

v.

GLIDDEN COMPANY, DURKEE FAMOUS FOODS DIVISION, a foreign corporation, Defendant.

United States District Court
S. D. New York.

June 30, 1960.

442

Sahn, Shapiro & Epstein, New York City, for plaintiffs, Morris Shapiro and Harry Katz, New York City, of counsel.

White & Case, New York City, for defendant, Chester Bordeau, New York City, of counsel.

PALMIERI, District Judge.

This case involves a dispute between a corporate employer and a group of employees concerning the seniority provisions of an expired collective bargaining agreement.[1] Plaintiffs, former employees of the defendant at its Elmhurst, New York, plant, commenced this action in 1958 in the Supreme Court of the State of New York, County of New York, seeking to recover damages for defendant's alleged breach of its contract with General Warehousemen's Union, Local 852 of the International Brotherhood of Teamsters, Chauffeurs, and Warehousemen, a labor union of which the plaintiffs are members. Defendant is an Ohio corporation authorized to do business in New York; plaintiffs are New York residents.

On defendant's petition setting forth the diverse citizenship of the parties and the value of the matter in controversy, the action was removed to this court. 28 U.S.C. §§ 1332, 1441(a). Jurisdiction here is based solely upon diversity of citizenship. The union is not a party and the court's power to proceed under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, has not been invoked. In urging their respective contentions, the parties have apparently assumed that the substantive law to be applied is that of New York. See Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1954, 348 U.S. 437, 460, 75 S.Ct. 489, 99 L.Ed. 510. With respect to the legal issue raised by the complaint, however, the court has examined both New York law and the policy of our national labor laws, see Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, and has been unable to detect any differences which might bear upon the resolution of this controversy. See Local Lodge 2040 v. Servel, Inc., 7 Cir., 268 F.2d 692, certiorari denied, 1959, 361 U.S. 884, 80 S. Ct. 155, 4 L.Ed.2d 120.

Statement of Facts [2]

From 1929 until November 30, 1957, defendant operated a plant at Elmhurst where it engaged, among other things, in the manufacture of coconut products, spices and condiments. Defendant and Local 852 first entered into a collective bargaining agreement on January 6, 1950, effective December 1, 1949, and expiring November 30, 1951. Thereafter, successive agreements were effected at two-year intervals. The last of these successive two-year agreements is dated March 13, 1956 and embraced the period from December 1, 1955 to November 30, 1957. By its terms, the agreement would be automatically renewed unless either party gave sixty days' notice of termination. Such notice was given by defendant on September 16, 1957 and the agreement was terminated on November 30, 1957.[3]

1. At the hearing on May 23, 1960, the parties stipulated in the record that each waived jury trial with respect to the issue of defendant's liability. It was further stipulated that if the court should determine that defendant is not liable to plaintiffs, the court would thereupon order dismissal of the complaint; and if the court should hold that defendant is liable to plaintiffs, a jury would be empanelled to determine the issue of damages.

2. Pursuant to a stipulation between the parties, the defendant submitted a Statement of Facts in lieu of the taking of its deposition. At the hearing, plaintiff's counsel introduced in evidence Exhibits annexed to defendant's Statement and read into the record considerable portions of the Statement itself. Plaintiffs offered no other evidence. Defendant then offered the remaining portions of the Statement and plaintiffs were given leave to indicate any parts claimed to be irrelevant or incompetent. The facts summarized herein have not been disputed by plaintiffs.

3. All of the plaintiffs commenced employment at the Elmhurst plant prior to December 1, 1949, the effective date of the first collective bargaining agreement. Plaintiff Zacharczyk was laid off on No-

The defendant terminated the collective bargaining agreement pursuant to the decision of its Board of Directors to discontinue operations at the Elmhurst plant and to establish a new plant at Bethlehem, Pennsylvania. Defendant leased the Bethlehem plant on May 6, 1957 and, on May 16, 1957, Elmhurst employees were notified that operations would be discontinued in several months. In October, November and December of 1957, defendant removed some of the Elmhurst machinery and equipment for relocation at the Bethlehem plant.[4] Additional machinery and equipment were installed at Bethlehem and changes in manufacturing procedures were effected for the purpose of increasing production.

Under the agreement which was terminated on November 30, 1957, Elmhurst employees were entitled to seniority rights and certain fringe benefits. Defendant did not offer the plaintiffs continued employment at its Bethlehem plant with retention of seniority rights acquired at Elmhurst; it did offer to receive applications at the Bethlehem plant from former Elmhurst employees and to give Elmhurst applicants fair consideration along with all other applicants. Defendant did not give Elmhurst employees the opportunity to submit at the Elmhurst plant applications for Bethlehem employment. None of the plaintiffs filed applications for positions at the Bethlehem plant.[5] However, applications were received from two former Elmhurst employees who are not parties to this action and offers of employment were made to both. One accepted and is currently employed at the Bethlehem plant. He has received no credit for seniority accrued while employed by defendant at its plant in Elmhurst.

### The Alleged Breach of Contract

On these agreed facts, plaintiffs have raised a narrow and sharply defined legal issue. It is conceded that the collective bargaining agreement governing employment relationships at the Elmhurst plant was terminated on November 30, 1957 and that, in effecting the termination of the agreement, the defendant fully complied with all statutory and contractual requirements. Nor do plaintiffs challenge defendant's right to close or impugn its good faith in closing the Elmhurst plant and establishing a new plant in Bethlehem. Cf. United Steel Workers v. New Park Mining Co., D.C.Utah 1958, 169 F.Supp. 107, 110–111. The sole issue raised by the complaint concerns the scope and significance of the seniority provisions of the collective bargaining agreement.[6]

Plaintiffs maintain that it was an implied condition of the bargain between the union and the company that the seniority rights created by the contract would survive the termination date of the agreement. It is urged that to meet the continuing obligations imposed by the surviving seniority provisions, defend-

---

vember 18, 1957; the other plaintiffs were laid off on November 1, 1957.

4. Approximately 75% of the machinery previously used by defendant in its coconut processing and packaging operations at its Elmhurst, Long Island, plant is presently being used by defendant in its coconut processing and packaging operations at its plant in Bethlehem, Pennsylvania.

 Approximately 25% of the machinery previously used by defendant in its condiment grinding, filling and packaging operations (including spices) at its Elmhurst, Long Island, plant is presently being used by defendant in its condiment grinding, filling and packaging operations (including spices) at its plant in Bethlehem, Pennsylvania.

5. New employees hired at Bethlehem perform duties similar to those performed at Elmhurst by plaintiffs Zdanok (coconut filling), Kreischer (spice filling), and Hackett (spice filling). Duties performed by plaintiffs Zacharczyk and Williams (shipping) at Elmhurst have been incorporated into other job classifications at Bethlehem.

6. Under the circumstances of this case, plaintiffs have standing as beneficiaries of the collective bargaining agreement to enforce provisions made for their benefit. Local Lodge 2040 v. Servel, Inc., 7 Cir., 268 F.2d 692, 696, certiorari denied, 1959, 361 U.S. 884, 80 S.Ct. 155, 4 L. Ed.2d 120; 6 Corbin, Contracts § 1420 n. 73 (1951, Supp.1959).

ant was required to offer plaintiffs employment at Bethlehem to which seniority status acquired at Elmhurst would attach. Plaintiffs claim that defendant's failure to make such an offer resulted in the deprivation, not only of their right to continued employment, but also of their interest in fringe benefits arising from defendant's pension [7] and group life insurance [8] plans and the union's welfare plan.[9]

Defendant contends that no implied understanding as to the survival of seniority rights can reasonably be drawn from the terms of the agreement or the prior relationship of the parties. Rather, it is defendant's position that seniority ratings acquired at Elmhurst and the benefits secured by such ratings derived from and depended upon a contract expressly confined in scope and application to terms and conditions of employment at the plant in Elmhurst. Accordingly, defendant asserts that upon cessation of operations and lawful termination of the agreement, the subject of plaintiffs' seniority rights, i. e., employment at Elmhurst, ceased to exist. In short, defendant maintains that the contracting parties never bargained for transferable seniority rights and that the implication that such rights were designed to outlive the life of the plant and the agreement is without foundation.

### The Prior Proceedings and The Defense of Res Judicata

On October 23, 1957, Local 852 served on defendant a notice of intention to ar-

---

7. "Pursuant to the terms of the contract, the employees of the defendant at its plant in Elmhurst, New York were entitled to certain benefits under the defendant's Retirement Plan for Hourly Employees provided they complied with certain necessary conditions of the Plan. The Plan provides for benefits for employees retiring at 65 years of age. It further provides for retirement of employees after reaching 55 years of age while still employed by the defendant and having 15 years of credited service with the defendant. Also, an employee with 15 years of credited service with the defendant who is totally and permanently disabled at any time while employed by the defendant receives retirement benefits. Vested rights to retirement benefits at age 65 are acquired after the employee reaches age 45 while still employed by the defendant and has 15 years of credited service with the defendant. The Plan is non-contributory and the defendant pays the entire cost of the benefits. The Plan covers regular hourly employees of the defendant employed at its various plants throughout the United States where the Plan is in effect. Upon termination of employment of the employees at the defendant's plant in Elmhurst, New York on November 30, 1957, those who were 65 years of age, or who had 15 years of credited service and were 55 years of age and who elected to receive retirement benefits early were eligible for and are presently receiving retirement benefits pursuant to the defendant's Retirement Plan for Hourly Employees. Those employees who were 45 years of age and had 15 years of credited service were advised by the defendant of their vested rights in the Plan to retirement benefits upon reaching 65 years of age. With the exception of the aforementioned employees, no other employees of the defendant's plant in Elmhurst, New York received any benefits under the defendant's Retirement Plan for Hourly Employees after employment was terminated at such plant." Transcript, pp. 7–8.

8. "There is no reference in the contract to the defendant's Group Life Insurance Plan. However, on a voluntary basis, the defendant made its employees of its plant in Elmhurst, New York eligible under this plan for six consecutive months of employment. Pursuant to the terms of the plan, the life insurance coverage for each employee was continued for 31 days after the employee's termination of employment." Transcript, p. 10.

9. "Pursuant to the terms of the contract the defendant was required to pay 4½¢ an hour per employee or a maximum of $1.80 per employee per week into the Union Welfare Fund during the term of the aforementioned contract.

"This requirement was amended December 1, 1956 so that the defendant was required to pay 8.55¢ per hour per employee or a maximum of $3.42 per employee per week for the remainder of the term of the contract. The defendant had no control or responsibility for the administration of the Union Welfare Plan other than to make the aforementioned payments." Transcript, p. 9.

bitrate certain disputes pursuant to section 1458-a of the New York Civil Practice Act and the terms of the collective bargaining agreement. The defendant then moved in the Supreme Court of New York, Queens County, to stay arbitration upon the ground that the disputes were not arbitrable under the arbitration clause of the collective bargaining agreement. That clause provides as follows:

> "Any question, grievance or dispute arising out of and involving the interpretation and application of the specific terms of this Agreement * * * shall, at the request of either party, be referred to the New York State Mediation Board for arbitration."

The court granted defendant's motion, holding that the issues tendered for arbitration did not "arise out of the specific terms" of the collective bargaining agreement. In an opinion filed in support of its order staying arbitration,[10] the court stated:

> "[N]o provision was made in the collective bargaining agreement relating to the continuance or discontinuance of operations at Elmhurst; for the continuance of employment of the employees covered by the said agreement for any period of time other than the expiration date thereof, nor requiring the company to offer to each employee continued employment with full seniority in the

event of discontinuance. It cannot, therefore, be said that the disputes the Union claims to have with Glidden are referable to arbitration under a clause which requires arbitration only with respect to 'specific terms' of a collective bargaining agreement."

\* \* \* \* \* \*

> "It follows * * * that Glidden's motion to stay arbitration must be granted, whatever other remedies the Union may have with respect to the alleged disputes." (10 Misc.2d 700, at pages 705–706, 172 N.Y.S.2d at pages 683–684).

Following this decision the plaintiffs instituted the present action. Before interposing its answer, defendant moved for summary judgment urging that the doctrine of res judicata required dismissal of the plaintiffs' claim. In a memorandum order, Judge Dimock denied the defendant's motion.[11] Defendant then filed its answer, affirmatively alleging the defense of res judicata.

■ The question of fact litigated and determined by the state court and essential to its order staying arbitration was whether or not the claims as to survival of seniority rights arose out of the specific terms of the agreement. The state court found that none of the specific contractual provisions expressly conferred the rights now asserted by plaintiffs.[12]

10. Matter of General Warehousemen's Union, 1958, 10 Misc.2d 700, 172 N.Y.S. 2d 678.

11. The memorandum reads as follows:
"Defendant moves for summary judgment on the ground that a state court has held that plaintiffs' claim is without substance and that it should therefore be dismissed as res judicata. I do not agree that the claim has been held to be without substance. I read the state court opinion as holding only that the claim is not within the arbitration agreement there sought to be enforced. My construction of the state court ruling is enforced by the statement at the end of the judge's opinion, Mtr. of Gen. Warehousemen's Union, 10 Misc.2d 701, 706, [172 N.Y.S.2d 678] '* * * motion to

stay arbitration must be granted, whatever other remedies the Union may have with respect to the alleged disputes.'" (S.D.N.Y. September 22, 1958).

12. "In the case at bar the Union has not been able to point to any specific term or provision in the collective bargaining agreement in question or by reference to the welfare, pension and group insurance plans which are part of this record, requiring Glidden to continue operations at Elmhurst or to continue the employment of any employee for any period of time, certainly not beyond the expiration date of the agreement, or to offer to each employee employment with full seniority after the discontinuance of such operations, or as an alternative severance pay, or in any way dealing

As to this issue, the state court judgment should have a collateral estoppel effect [13] precluding plaintiffs from relitigating the question whether their claims arise out of the specific language of the contract. However, defendant is entitled to no further benefit by reason of the prior adjudication.[14] To determine whether the union's claims were arbitrable, the state court was not required to reach the issue presented here. For plaintiffs now urge that when the ambiguities and gaps in the contract are studied in the context of the long-term employment relationship existing between the parties, the survival of seniority rights emerges as an implied part of the bargain.[15] In other words, the plaintiffs seek application of the agreement, in a manner alleged to be consistent with the intent of the parties, to a situation for which no specific provision was made.[16]

## The Scope of the Bargain

Under the seniority system in effect at Elmhurst, [17] employees were to be laid off in reverse order of plant seniority and recalled in inverse order of layoff. In instances of continuous layoff, the seniority of an employee with less than five years'

employment was to terminate after two years' continuous layoff; for employees with more than five years' service, seniority was to be terminated at the end of three years.[18] If seniority had been terminated by reason of continuous layoff, a former employee would still be entitled to preference before new employees were hired.[19] Plaintiffs point out that their employment was terminated by defendant shortly before the expiration date of the contract.[20] Therefore, they assert that their rights to three-year retention of seniority and indefinite preferential rehiring had accrued while the contract was fully effective. In other words, plaintiffs view the termination of their employment as a layoff due to curtailment of production and claim that their accrued three-year seniority retention rights entitled them to resume work when operations commenced in Bethlehem.[21]

■ Whether the agreement should be understood to assure to plaintiffs retained seniority rights had operations continued at Elmhurst after the collective bargaining agreement expired would present a troublesome question of construction. See United Steelworkers of America v. Enterprise Wheel and Car Corp.,

with alleged property rights for employees whose employment has been terminated by Glidden's discontinuance in good faith of its operations at Elmhurst." (10 Misc.2d at page 704, 172 N.Y.S.2d at page 682).

13. See Restatement, Judgments §§ 45(c), 65(2), 68, 80(4) (1942). See also Schuylkill Fuel Corp. v. B & C Nieberg Realty Corp., 1929, 250 N.Y. 304, 165 N.E. 456.

14. See Restatement, Judgments, supra § 68(2); Karameras v. Luther, 1938, 279 N.Y. 87, 17 N.E.2d 779.

15. Cf. Groseclose v. Great Northern Ry., D.C.Mont.1960, 25 F.R.D. 181. See generally, Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1490–98 (1959).

16. Cf. Brooklyn Eagle, Inc., 32 Lab.Arb. 156, 167–78 (1959).

17. See Exhibit A (Dec. 1, 1955–Nov. 30, 1957 Collective Bargaining Agreement), Article XI.

18. The plaintiffs herein had been employed by the defendant at its Elmhurst plant for periods ranging between ten and twenty-five years.

19. The seniority system outlined in the text had been in effect continuously since December 1, 1949, the effective date of the first collective bargaining agreement between the Glidden Company and Local 852.

20. See note 3, supra.

21. Plaintiffs concede that seniority rights created by a collective bargaining contract are not indestructible. See Elder v. New York Cent. R. R., 6 Cir., 1945, 152 F.2d 361. However, they urge that on the facts presented here plaintiffs' status could not be destroyed unless Local 852 and the Glidden Company agreed to a modification of employee seniority rights.

1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 2d 1424. However, it is unnecessary to determine whether plaintiffs are correct in asserting that the expired agreement continued to afford recall rights, to employees or whether, as defendant urges, all recall rights terminated when the period of the agreement came to an end.[22] For the critical issue is not whether plaintiffs' seniority retention rights accrued during the effective period of the collective bargaining agreement and survived its termination,[23] but whether the unit to which their rights could attach extended beyond the Elmhurst plant.[24] It is not enough for plaintiffs to establish that if Elmhurst operations had continued, their seniority status would have survived termination of the collective bargaining agreement. In order to recover, plaintiffs must also show that the governing seniority system gave them the right to "follow their work" to the new plant.

I find nothing in the record to warrant the conclusion urged by plaintiffs as to the unlimited geographic scope of their seniority rights. Wide variations exist in seniority systems used in industry. See Aeronautical Industrial District Lodge 727 v. Campbell, 1949, 337 U.S. 521, 526–27, 69 S.Ct. 1287, 93 L.Ed. 1512. With respect to the unit covered, an entire multi-plant company or district may be made subject to the same system, or the system may be limited to a particular plant, department or occupation.[25]

22. The cases upon which plaintiffs rely relating to the survival of rights to vacation and severance pay are inapposite. In those cases the full consideration for the employer's obligation had been furnished by the employees. Although termination of employment followed termination of the contract, the obligation to pay related to services already performed at the plant covered by the agreement. Matter of Potoker, 1st Dep't, 1955, 286 App.Div. 733, 146 N.Y.S. 2d 616, affirmed Potoker v. Brooklyn Eagle, Inc., 1957, 2 N.Y.2d 553, 161 N.Y.S.2d 609, certiorari denied 1957, 355 U.S. 883, 78 S.Ct. 151, 2 L.Ed.2d 113, arbitration reported sub nom. Brooklyn Eagle, Inc., 32 Lab.Arb. 156 (1959); Owens v. Press Publishing Co., 1956, 20 N.J. 537, 120 A.2d 442. In view of the apparent purpose of such vacation and severance pay provisions, it would be unreasonable to suppose that the parties did not expect their rights and obligations to be determined by reference to their prior understanding and practice. By contrast, the plaintiffs here seek damages for violation of their alleged right to transfer and continue an employment relationship involving future performance obligations on both sides.

23. See Owens v. Press Publishing Co., supra, note 22 (discharge from service during term of a contract is not a condition *sine qua non* to the enforcement of an accrued right).

24. Plaintiffs' emphasis on the controlling significance of the technical accrual dates of their seniority rights is somewhat anomalous in view of the broad non-technical interpretation they urge with respect to the extent of the seniority unit. See transcript pp. 45, 51–54.

Under the circumstances presented here, it is altogether likely that the two and three year recall provisions were inserted to protect the plant seniority status of laid off employees should the agreement be automatically renewed from year to year beyond the specified expiration date. See Exhibit A, Article XXII. In the event of such automatic continuation of the agreement, accrued plant recall rights of employees who were laid off at the time renewal occured would remain in full effect.

25. The following units, among others, have been designated in collective bargaining agreements as the area within which employees may exercise seniority rights:

"*Companywide Seniority.*—Length of the service computed from the date of hiring into the company. All employees, regardless of plant location, ranked on the same seniority list.

"*Plant Seniority.*—The length of time an employee has worked in the plant. All employees of the plant ranked on the same seniority list.

"*Department Seniority.*—The length of time an employee has worked in a particular department.

"*Job Seniority.*—The length of the time an employee has worked on a particular job or in a particular job classification."

See Collective Bargaining Clauses: Lay-

Under the circumstances presented here —the situation of the contracting parties,[26] their description of the subject of their agreement [27] and the absence of any prior history as to transferred seniority rights [28]—I have concluded that the parties' bargain and understanding were limited to seniority rights at the Elmhurst plant.

The agreement between Glidden and Local 852 refers to plant and department seniority but no reference is made to extension of the unit contingent upon events such as plant abandonment, transfer, merger or consolidation of operations.[29] However, agreements containing provisions for extension of the area in which seniority rights may be exercised are not uncommon. Since such provisions are tailored to meet the needs of particular enterprises, they vary considerably in form and content. For example, they may be limited to a specific time period, to new plants only, or to employees laid off as a result of total plant closing.[30] In view of the alternative techniques which might be employed to deal with the issue of interplant seniority,[31]

off, Recall, and Work Sharing Procedures, U.S. Dept. of Labor, Bull. 1189, p. 42 (1956).

26. At the hearing, plaintiffs' counsel conceded that even if all the 160-odd employees at the Elmhurst plant had accepted employment at Bethlehem, Local 852 could not continue as accredited bargaining representative. Transcript, p. 53.

27. The agreement is entitled: "Agreement between Durkee Famous Foods, Division of The Glidden Company, No. 23—Elmhurst, New York, and General Warehousemen's Union, Local 852 of the International Brotherhood of Teamsters, Chauffeurs, and Warehousemen, December 1, 1955 to November 30, 1957."

Its preamble reads: "This Agreement Made and Entered into at New York, New York, by and between the Glidden Company, Durkee Famous Foods Division, for and on behalf of its plant facilities located at Corona Avenue and 94th Street, Elmhurst, Long Island, New York, hereinafter referred to as 'the Company', and General Warehousemen's Union, Local 852 affiliated with The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, hereinafter referred to as 'the Union'."

28. In the latter part of 1956 the defendant discontinued preparation at Elmhurst of shortening, confectionery products, and various oil products. These operations are now conducted at the defendant's plant in Louisville, Kentucky. The record contains no evidence of any proceedings or negotiations between Local 852 and the Glidden Company with respect to this matter.

Cf. Groseclose v. Great Northern Ry., D.C.Mont.1960, 25 F.R.D. 181; Wilson v. Illinois Central R.R., D.C.N.D.Ill. 1957, 21 F.R.D. 588, 589. See generally Cox and Dunlop, The Duty to Bargain Collectively During the Term of an Existing Agreement, 63 Harv.L.Rev. 1097, 1116-33 (1950).

29. See Exhibit A, Article XI.

30. See Analysis of Layoff, Recall and Work-Sharing Procedures in Union Contracts, U.S. Dept. of Labor, Bull. 1209, pp. 25-34 (1957).

31. Techniques which have been used to deal with interplant transfer situations are illustrated by the following clauses:

*"Multiplant company agreement: Employees laid off given preference in employment over applicants at other company plants*

"Employees laid off in any plant through reduction of force, desiring employment in other plants of the company, may make application at such other plants in the regular manner and will receive preference for any vacancy they may be qualified to fill before new employees are hired." Bull. 1189, supra, note 22 at p. 33.

\* \* \* \* \*

"When operations or departments are transferred from one plant to another plant of the corporation, employees engaged on such operations or employed in such departments who are out of work as a result of the transfer may if they so desire be transferred to the other plant and carry their ranking for seniority to the other plant." Collective Bargaining Provisions: Seniority, U.S. Dept. of Labor, Bull. 908–11, pp. 47–48 (1949).

\* \* \* \* \*

*"Accumulated Seniority Transferred with Employee to Another Plant in Event of Geographical Relocation*

"In the event of the geographical relocation in whole or in part of any of the work performed by any of the employees covered by this agreement, the employee affected, after due consideration for the

it would be unreasonable to expect a court to imply a general understanding between the parties as to the extent of the seniority unit when no evidence has been offered as to negotiations on the subject or an established course of practice on the part of the employer.

 Contrary to plaintiffs' contention, the collective bargaining agreement does not become illusory if its provisions are held to relate to a single existing plant. This is not the case of an employer who has abandoned the specified plant and transferred operations to a new location in order to circumvent contractual or statutory requirements.[32] Where, as here, the Board of Directors' decision to relocate is based on an exercise of business judgment in good faith, the employer's obligation to deal fairly and honestly with its employees is satisfied.[33] In sum, under the circumstances presented in this case, where no relevant limitation on the employer's freedom of action is found in the agreement or the prior conduct of the parties, no policy of New York law or our national labor laws requires the employer to preserve for its employees seniority status acquired under an expired agreement covering a closed plant.[34]

## Conclusion

Accordingly, it is my conclusion that plaintiffs have failed to prove facts which would entitle them to the relief sought. The Clerk is directed to enter judgment on the merits and with costs against the plaintiffs. Fed.R.Civ. P. 52(a), 28 U.S. C.A.

So Ordered.

seniority rights of the employees at the new location, may be transferred at company expense to the new location and given full credit for their accumulated classification seniority at the point to which the work is transferred in whole or in part." Bull. 908–11, supra, p. 49.

\* \* \* \* \*

"*Company-Wide Seniority*

"Seniority of employees shall be company-wide and such seniority shall commence from original date of employment in the production and maintenance departments of the company's operations for employees certified in the order issued by the National Labor Relations Board." Bull. 908–11, supra, pp. 15–16.

\* \* \* \* \*

"*State-Wide Seniority*

"For the purpose of applying the seniority provisions of this article the State of ———— shall be regarded as the unit." Bull. 908–11, supra, p. 16.

\* \* \* \* \*

"*Seniority by Geographical District; Modifications by Mutual Agreement*

"The operations of the company shall be divided into the following five (5) seniority districts in which operators there regularly employed shall hold seniority.

District 1 .......... \* \* \* Regions
District 2 .......... \* \* \* Regions
District 3 .......... \* \* \* Regions
District 4 .......... \* \* \* Regions
District 5 .......... \* \* \* Regions

"If any change occurs in the operations of the company which would necessitate an increase in, decrease from, or rearrangement of the above named seniority districts the company agrees that said increase, decrease, or rearrangement shall be subject, as same affects seniority, of further negotiations and agreement between the parties hereto." Bull. 908–11, supra, p. 16.

32. Cf. Matter of· Jacob H. Klotz, 13 N.L. R.B. 746 (1939) (employer acted in bad faith in transferring operations to a new location).

33. In urging that they have been deprived of rights under the Retirement Plan, Group Life Insurance Plan, and Union Welfare Plan, see notes 7–9, supra, plaintiffs do not rely upon any provision contained in special agreements setting up the plans. Rather, they assert that they have been deprived of rights under each of the plans by reason of defendant's alleged breach of the seniority provisions of the collective bargaining agreement.

34. See Local Lodge 2040 v. Servel, Inc., 7 Cir., 268 F.2d 692, 698, certiorari denied 1959, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120; System Federation No. 59 v. Louisiana & A. Ry., 5 Cir., 1941, 119 F.2d 509; Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1497 (1959); Cox and Dunlop, Regulation of Collective Bargaining by the National Labor Relations Board, 63 Harv. L.Rev. 389, 401 (1950).