LUDOVIC A. AMELOTTE, Plaintiff, *v.* THE JACOB DOLD PACKING COMPANY, Defendant.

Supreme Court, Erie County, February 24, 1940.

*Daniel B. Shortal* [*Philip A. Laing* of counsel], for the plaintiff.

*Falk, Phillips, Twelvetrees & Falk* [*Frederic R. Twelvetrees* of counsel], for the defendant.

VAUGHAN, J. Motion, under rule 106 of the Rules of Civil Practice, to dismiss plaintiff's amended complaint on the ground that it does not state facts sufficient to constitute a cause of action.

The action is brought to recover the sum of $1,877.68, the alleged value of time lost by plaintiff during the period between the date of his discharge and the expiration of a labor contract entered into between the plaintiff's employer, the defendant, and the United Butchers', Meat Cutters' and Meat Packers' Union, Local 105, of which plaintiff was a member, and the C. I. O. The amended complaint, in so far as pertinent to the disposition of the action, shows that plaintiff on July 21, 1937, and thereafter until his discharge, was in the employ of the defendant at a weekly wage of twenty-one dollars and fifty-six cents; that he was a member of the United Butchers', Meat Cutters' and Meat Packers' Union, Local 105; that a contract was entered into between the union and the defendant on September 24, 1937; that on May 31, 1938, said contract was extended to September 24, 1939; that the plaintiff accepted the provisions and obligations of said contract; that on January 20, 1939, without particular cause and solely as part of a plan to sell and close out its Buffalo business, the defendant discharged the plaintiff.

The contract in question is attached to and made a part of the complaint. Article I defines the relationship of the parties; article II, the management's rights; article III, time and operations. Article IV provides for the disposition of alleged violations and disputes. Article V pertains to hours and wages, and article VI provides for termination of the contract.

Plaintiff endeavors to sustain his complaint upon one of two theories: (a) That upon the execution of the contract between the defendant and the union, plaintiff thereby became employed for one year from the date thereof with a provision for automatic renewal for a further period of one year; or (b) that if the agreement

does not constitute a contract of hiring for a definite time that it does prevent the defendant from discharging the plaintiff without cause.

The court is not in accord with either contention. The complaint does not allege that the plaintiff was employed by the defendant for any definite period of time. The only reference to any period of employment is that which states that plaintiff's wage was twenty-one dollars and fifty-six cents per week. Mere specification that payments are to be made on a periodic basis does not make the contract for hiring run for such period.

" In this State the rule is settled that unless a definite period of service is specified in the contract, the hiring is at will and the master has the right to discharge and the servant to leave at any time." (*Watson* v. *Gugino*, 204 N. Y. 535, 541.)

Unless it can be said that the contract establishes a definite term of employment between the plaintiff and the defendant, plaintiff cannot maintain the present action and his complaint should be dismissed. The contract in question was negotiated and entered into following an election and certification by the National Labor Relations Board that the union was the exclusive bargaining agency for the defendant's employees.

In *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* (301 U. S. 1) the court, in upholding the validity of the National Labor Relations Act, said with reference to the purpose of the act and the rights of the employer thereunder (at p. 45):

" The theory of the Act is that free opportunity for negotiation with accredited representatives of employees is likely to promote industrial peace and may bring about the adjustments and agreements which the Act in itself does not attempt to compel. * * * The Act does not interfere with the normal exercise of the right of the employer to select its employees or to discharge them. The employer may not, under cover of that right, intimidate or coerce its employees with respect to their self-organization and representation, and, on the other hand, the Board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised for other reasons than such intimidation and coercion."

In *Union Drawn Steel Co.* v. *National Labor Relations Board* (109 F. [2d] 587) the United States Circuit Court of Appeals, speaking of the right of an employer under the National Labor Relations Act, said: " The right of the employer, for general economic reasons, to make use of a smaller staff to operate his business, to decrease his production, or to go out of business entirely if he desires

to do so, we regard as indubitable. For example, if an employer has employed ten men to operate ten machines, he may, for such reasons, employ only nine men to operate the ten machines or he may operate only nine machines with only nine men, or, if he chooses, he may cease all operations. This right must be deemed to be one of the employer's weapons in the general economic struggle. * * * I do not doubt that an employer possesses the right to go out of business or to decrease his production at any time or for any reason that he sees fit. These weapons remain to him whether he be engaged in a struggle with his competitors or with his employees. His motive in ceasing production or decreasing it is not open to scrutiny and is impertinent to any issue into which the Labor Board is entitled to inquire. To hold otherwise would in fact deprive the employer of the control of his business."

Does the fact that the employer entered into a written contract with the union certified by the Labor Board as the exclusive bargaining agency for the employer's employees respecting wages, hours and general working conditions, bind the individual employees in the union to serve for any definite time or deprive the employer of the right to discharge his employees for any reason save those prohibited by the contract? I think not. The contract entered into between the defendant and plaintiff's union does not purport to cover or fix the terms of employment of the individual members of the union but only establishes and defines the conditions of employment between the defendant and those persons having the status of employees during the life of the contract. No one could seriously contend that if the contract was terminated as provided in article VI of the agreement because the union's right as a bargaining agency had expired that plaintiff's employment and that of all other employees in defendant's service would be automatically terminated. The primary purpose of a contract of the character of the one under consideration is to carry out the purposes of the National Labor Relations Act by affording employees the advantages derived from collective bargaining but not to deprive the employer of the right to discontinue his business if he sees fit, or to reduce his working force for any reason not prohibited by the contract.

In *Cross Mountain Coal Co.* v. *Ault* (157 Tenn. 461; 9 S. W. [2d] 692) plaintiff's union and defendant entered into a contract which was to be in effect from April, 1920, until March, 1922. This contract established rates of pay, hours of work, etc. It contained among other things the following provisions: " The right to hire must also include the right to discharge, and it is not the purpose of this agreement to abridge the rights of the employer in either of these respects. If, however, any employee discharged by

the company claims that an injustice has been done him, the question, like any other disputes, shall be taken up and disposed of by the Board of Arbitration. * * * it is distinctly understood and agreed that men shall not be discriminated against on account of membership or non-membership in any organization."

In May 1921, the defendant suspended operations in its mine because of poor market conditions until November, 1921. Because of union activities plaintiff was not rehired when the mine was reopened. His action against the defendant to recover wages contained two counts. The first was for wages from May, 1921, to November, 1921, and the second count for wages from November, 1921, until March, 1922. The court in granting judgment for the defendant on the first count and for the plaintiff on the second count said: " It is contended for the plaintiff that the closing of the mine was a breach of the contract of employment, and that the effect of the contract was that the miners should have continuous employment during the two years covered by it. We cannot sustain this contention. The agreement or contract specifically stated the right of the parties in the event the mine should be closed by the operator on account of any difference or dispute between the operators and the miners. The contract thereby stated the circumstances under which the closing of a mine during the period covered by the agreement would confer any rights upon the employees; and the clear inference to be drawn from the terms employed, is that unless a mine should be closed because of such a difference or dispute, the closing of the mine would not be a violation of any of the terms of the agreement. We find nothing in the contract which could have the effect of binding the operators accepting it to operate their mines continuously, or to continue the wages of miners during a discontinuance of operations."

In *Yazoo & Mississippi U. R. R. Co. v. Webb* (64 F. [2d] 902) the court expressed its opinion as to the nature of a contract such as the one under consideration as follows (at p. 903): " An agreement upon wages and working conditions between the managers of an industry and its employees, whether made in an atmosphere of peace or under the stress of strike or lockout resembles in many ways a treaty. * * * It establishes no concrete contract between the employer and any employee. No one is bound thereby to serve, and the employer is not bound to hire any particular person. It is only an agreement as to the terms on which contracts of employment may be satisfactorily made and carried out. * * * Ordinarily, as in this case, there is no period fixed for the hirings and they are at the will of the parties, the employer having the right to discharge at any time and the employee having the right to quit. But

the employment though indefinite as to time is a relationship while it lasts, and is subject to the conditions fixed in the working agreement for the industry. Thus a worker cannot be discharged for causes prohibited by the agreement or without a hearing if that is provided, and the agreed seniorities must be observed in promoting, laying off, or re-employing men."

To like effect is the expression of the court in *Cross Mountain Coal Co.* v. *Ault (supra)* wherein the court said: "We think the legal effect of the agreement between the operators and the miners is that it became a part of and formed the basis of the contract of employment between each operator accepting it and each of his employees, who entered or continued in the service and employment of such employer with knowledge of its execution, and in the absence of any express contract between the individual employee and his employer inconsistent with the terms of the agreement."

I am unable to find anything in the contract compelling the defendant to operate for any stated period of time or which prohibits it from closing down or selling out its business at any definite time. While the defendant continued in business it was its obligation to, in good faith, carry out the provisions of its agreement with the union but it was not compelled to continue in business for the period of the contract or for any definite time. The contract by its very terms recognizes the right of the employer to hire, promote and lay off its employees, " as the operations of the business may require, and to discipline, suspend or discharge them for incompetency or other just cause."

The limitations placed upon the employer under the contract to discharge an employee for cause without a hearing is not applicable to a situation such as this. Plaintiff's discharge was not for cause in the sense used in the contract but solely by virtue of the right vested in the employer to discontinue his business if and when he saw fit. The exercise of that right does not call upon the employer for explanation, or afford the employee the right to a hearing. His discharge was for reasons other than those prohibited by the contract and defendant's decision to sell out its business does not subject it to an action by its employees foreclosed of employment by the exercise of the prerogative of the employer to continue in business or not at will.

Motion granted, with ten dollars costs.

Submit order.