In the Matter of the Arbitration between STRAUSS STORES CORPORATION, Petitioner, and LOCAL 830 RETAIL AND WHOLESALE EMPLOYEES UNION, C. I. O., Respondent.

Supreme Court, Special Term, Queens County, March 27, 1947.

*Philip Davis* for petitioner.

*Samuel M. Sacher* for respondent.

COLDEN, J. Application by petitioner for an order staying arbitration and cross motion by respondent to compel arbitration.

Petitioner maintains an office and warehouse in Queens County, and fifty-six retail stores in the metropolitan area for the sale of general merchandise, principally automobile accessories. On June 22, 1946, it entered into a written agreement with respondent, a labor union, recognizing it as the sole bargaining agency for certain classes of its employees, and regulating the conditions of their employment. Among other things the contract provided that petitioner might employ new or additional employees " from any source whatsoever "; that new employees, after serving a probationary period, were required to become members of the respondent union which agreed " that it will accept into membership without discrimination, all such new or additional employees "; that petitioner would not lock out employees and respondent agreed that there

would be no strikes. The agreement further provided that the parties would endeavor to settle any differences arising between them and if unable to do so would submit such differences for determination to an arbitrator to be designated, upon the request of either party, by the New York State Board of Mediation. This agreement was to continue in effect until February 1, 1948.

On December 14, 1946, notwithstanding the no-strike provision of the agreement, a strike was declared and many of petitioner's employees quit their work. While the strike was in progress petitioner hired some new employees. On January 13, 1947, the parties settled the strike by another agreement, providing for certain wage increases, the reinstatement of all strikers, and that '' all provisions of the contract dated June 22, 1946 are to remain in full force and effect until the expiration date of the contract, to wit, February 1, 1948 * * *.'' No mention was made in this agreement of the new employees who had been hired during the strike.

On January 17, 1947, two days after the union men had returned to work, respondent, by letter demanded (1) that petitioner dismiss the employees hired by it between December 16th and January 14th because respondent's constitution and by-laws '' make ineligible for membership, persons who have been employed as scabs during a strike '', and (2) that petitioner require all employees hired after January 15, 1947, to apply for work permits in person at the union office. Petitioner refused to discharge the employees hired during the strike, whereupon respondent demanded arbitration of the following disputes:

'' 1. Whether the Employer shall be required to discharge those employees hired between December 16, 1946 and January 14, 1947.

'' 2. Whether the Employer shall be required to have all new employees appear at the Union in person for a Union Work Card.''

In a proceeding of this kind there are only two questions to be determined: (1) Whether an agreement to arbitrate was made and (2) whether there has been a failure or refusal to arbitrate. (*Matter of Lipman* [*Haeuser Shellac Co.*], 263 App. Div. 880, affd. 289 N. Y. 76; *Matter of Kahn* [*National City Bank*], 284 N. Y. 515.) The merits of the controversy cannot be considered by the court, but must be determined by the tribunal designated by the parties in the agreement to arbitrate.

Petitioner argues that respondent by calling the strike in December, 1946, repudiated the contract, including the arbitration clause therein, and thus exonerated the petitioner from compliance therewith. In *Matter of Kahn [National City Bank]* (*supra*, p. 523) it was held that the court on a motion of this character has no jurisdiction to determine whether the dereliction of one party would justify rescission by the other. It is true that in *Matter of Tully (Roberts)* (24 N. Y. S. 2d 638) the court, denying a motion to compel arbitration by petitioners who had discharged their attorney prior to the termination of the action, said (p. 639): "In addition the petitioner having repudiated the contract may not now seek to proceed thereunder." It appears, however, that there was a further factor in that case, namely, that the attorney's fee was to be derived only from the assets recovered in the action, and Special Term held that arbitration was contemplated only upon the recovery of assets. The Appellate Division affirmed without opinion (260 App. Div. 937). In the case at bar, it is unnecessary to determine whether respondent's repudiation constituted a rescission of the agreement. The parties, by making the new agreement of January 13, 1947, reinstated the original agreement including its arbitration clause.

We are thus brought to the essence of the controversy between the parties, namely, whether petitioner agreed to arbitrate the issues tendered by the respondent. It is true that the agreement between the parties contains an arbitration clause, but the scope of that clause will best be gleaned from the language used by them. Paragraph "14-A" of the agreement provides: "The parties whose signatures are hereto affixed shall make an earnest endeavor to settle any differences which may arise between them. In the event of their failure to so adjust any such disputes or differences the same shall be submitted for determination of an arbitrator to be designated upon request of either party by the New York State Board of Mediation, whose decision shall be final and binding upon both parties; *such arbitrator however, shall only rule on cases of alleged violation of the terms of this agreement and shall have no power to add to or subtract from or modify any of the terms of this agreement or agreements made supplemental thereto.*" (Italics supplied.)

Nowhere in either the original agreement or the modification thereof is there any reference whatsoever to the constitution or by-laws of the union and nowhere did the petitioner agree

to be bound by them. Under the language above quoted, the arbitrator would "have no power to add" them to the agreement. He was to be limited to ruling on "alleged violations of the terms of this agreement". Moreover, paragraph "4-E" of the contract provides, in part: "* * * and the Union agrees that it will accept into membership *without discrimination,* all such new or additional employees." (Italics supplied.)

In *Matter of International Association of Machinists (Cutler-Hammer, Inc.)* (271 App. Div. 917, 918) the Appellate Division, First Department, said: "While the contract provides for arbitration of disputes as to the 'meaning, performance, nonperformance or application' of its provisions, *the mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words cannot make an arbitrable issue.* It is for the court to determine whether the contract contains a provision for arbitration of the dispute tendered, and in the exercise of that jurisdiction the court must determine whether there is such a dispute. If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration." (Italics supplied.)

In that case the court was construing a bonus provision in a contract calling for arbitration. Rejecting the interpretation which the union sought to place on the language used, the court further said: "So clear is this and so untenable any other interpretation that we are obliged to hold that there is no dispute as to meaning of the bonus provision and no contract to arbitrate the issue tendered.'

Likewise, in the instant case, the language used is crystal clear and there can be but one meaning — that the respondent would accept into membership any new employee whatsoever without discrimination. It is clear that the first issue tendered by the respondent, namely, "whether the Employer shall be required to discharge those employees hired between December 16, 1946 and January 14, 1947" is not within the purview of the agreement.

As to the second issue tendered, neither agreement specified where work cards were to be issued. Prior to the strike they had been issued to new employees at their respective places of business, but respondent says that the new requirement that employees apply in person at its office was necessitated by the fact that petitioner discontinued the practice of deducting the union dues from the employees' pay. Pursuant to a clause

in the contract, either party had the right to terminate the check-off system of collecting dues. Obviously this dispute as to where work cards should be issued is a controversy to be determined, under the agreement, by arbitration.

There being no factual issue involved herein, it is unnecessary to hold a preliminary trial pursuant to sections 1450 and 1458 of the Civil Practice Act. (*Matter of Towns & James* [*Federal Labor Union*], 183 Misc. 181.)

Petitioner's motion to stay arbitration is, therefore, granted as to the first issue, and denied as to the second. Respondent's cross motion to compel arbitration is denied as to the first issue and granted as to the second.

Settle order on notice.