In the Matter of CHESTER F. X. BERGER, as President of Radio Guild, Local 50, United Office and Professional Workers of America, C.I.O., Petitioner. WORLD BROADCASTING SYSTEM, INC., Respondent.

Supreme Court, Special Term, New York County, March 12, 1948.

*Samuel M. Sacher* for petitioner.

*Henry Cohen* and *Jonathan B. Bingham* for respondent.

HOFSTADTER, J. This is a proceeding to compel arbitration under a collective bargaining agreement between a labor union and an employer. The issue between the petitioning union and the respondent employer is whether the dispute which has arisen is arbitrable under the collective agreement.

The employer has moved to dismiss the petition on the ground that it does not state facts sufficient to warrant the relief demanded. The employer has, however, also filed a detailed answering affidavit setting forth the facts later recited in this opinion and the petitioner has in turn replied. Inasmuch as all the facts are thus before the court, it is deemed to be in the interest of the parties to dispose of the matter on its merits rather than on any question of pleading.

The agreement was entered into on January 6, 1947, and was to continue for two years, subject to the right of either party at the expiration of the first year to reopen the same for the purpose of adjusting salary rates upward or downward. The agreement contained a detailed provision for grievance machinery and the following arbitration clause:

" XVI. ARBITRATION:

" Any grievances or disputes between World and the Union which have not been satisfactorily settled after following the grievance procedure hereinabove set forth shall be submitted to arbitration at the written request of either party to be served not later than fourteen (14) days after the matter has first been taken up under the provisions of Section XV(c) above, unless such time is extended by mutual consent. If within seven (7) days the parties fail to agree on an impartial arbitrator, then either party may request the New York State Board of Mediation to designate one. The decision of the arbitrator shall be final and binding upon both parties. The fees and expenses of the arbitrator shall be borne equally by the parties. Each party shall pay its own legal and other expenses."

The present controversy arises out of the discontinuance by the respondent of its wired music programing department and the consequent termination of the employment of those engaged in the operation of that department. This step was incident to the surrender by the respondent employer of the greater portion of the space theretofore occupied by it in the building in which it conducted its business and to other changes which it made in the interest of economy. Instead of itself conducting its programing department, the respondent arranged to have the work theretofore done by it performed through independent contractors. One of these independent contractors is the former senior union employee in the wired music programing department.

The union asserts that the termination of the employment of the programing department's former staff was either a layoff or discharge, within the terms of the collective agreement and, as such, the proper subject of arbitration. The employer resists this contention and urges that the abandonment of the department was in the exercise of its right, claimed not to be restricted by any provision of the collective agreement, to determine its basic business policies.

The agreement is carefully drawn and states the rights and obligations of the respective parties in great detail and covers

fully the subject matter usually found in collective bargaining agreements. The following are the specific clauses on which the determination of the question before the court largely hinges:

" XII. DISCHARGES:

" A. Employees shall be discharged only for good and sufficient reason; without any limitation to the generality of the foregoing, dishonesty, continued lateness, insubordination, violation of rules, incompetency, neglect of duty, fighting, intoxication, etc., shall be considered good and sufficient reason.

" B. No Employee shall disclose to anyone any confidential information pertaining to World's business and violation of this section shall be deemed good and sufficient reason for immediate discharge.

" XIII. LAY-OFFS:

" A. If it becomes necessary because of curtailment of work to lay off Employees in any department or on any job, then in so far as is practicable, and giving special consideration to ability, such lay-off shall be in order of seniority for the department or job involved, and World shall give to the Union and to the employees involved two (2) weeks' prior notice of any intended lay-off.

" B. In rehiring for a particular type of job, first preference shall be given to Employees who formerly held such jobs and were laid off and the order of rehiring among such employees shall, so far as practical, and giving special consideration to ability, be in accordance with their length of service. Upon rehiring such Employees shall automatically regain their full seniority rights.

" C. Any Employees laid off shall be paid the cumulative vacation pay due them at the time of such lay-off."

" XIX. COOPERATION:

" The parties agree to cooperate in every reasonable way in carrying out the provisions hereof and for the furtherance of harmonious relations. The management of World's operations and the direction of its staff, including the right to hire new Employees, to discipline for cause, suspend and discharge for cause, transfer, promote, or lay off Employees, in a manner not contrary to the provisions of this contract, to accomplish a reduction in force reasonably required for the efficient operation of World are vested exclusively in World. World shall have the right to determine the manner, location and extent of its operations and the methods and schedules of work, including the

means thereof and work procedures and processes. World shall have the right to promulgate reasonable rules ·and regulations governing the conduct of Employees and require their observance. When an Employee cannot report for work for any reason, he shall notify World immediately. The enumeration of the management prerogatives stated above shall not be deemed to exclude other prerogatives not enumerated herein.

" The provisions of this section shall not be interpreted by World in a manner contrary to the terms or spirit of this agreement. Any claim of discrimination on the part of World in the application of this section may be taken up under the provisions of sections ' XV ' and 'XVI ' hereof."

The union contends that the discontinuance of the programing department resulted in either a discharge or layoff, as these terms are used in sections XII and XIII of the collective agreement. In the view of the court, however, the limitation on the employer's right to discharge and to lay off employees was not intended to curtail the employer's right, in the exercise in good faith of its business judgment to discontinue a department or otherwise make a radical change in the method of its business operations. The purpose of the clauses invoked by the union was rather to prevent unjustified or discriminatory discharges under color of justifiable cause and, in the case of layoffs, to preserve seniority rights in the plant. Disputes arising out of discharges for cause claimed by the union to be otherwise motivated or from layoffs claimed to be discriminatory and not in accordance with the order prescribed in section XIII readily lend themselves to adjustment under the grievance machinery prescribed in the agreement and in the case of inability to agree, to arbitration. While the foregoing may not be an all-inclusive statement of the field within which sections XII and XIII were intended to be operative, it is a fair statement of the underlying purpose of these clauses and of the general types of disputes which were likely to arise under them during the period of the agreement. Neither of these clauses indicates an intent to interfere with the employer's exercise of his normal right to determine business policy.

Section XIX emphasizes the retention by the employer of the prerogatives normally lodged with management. True, the employer in exercising the right to discipline for cause, suspend and discharge for cause, or to transfer, promote or lay off employees, must do so " in a manner not contrary to the provisions of this contract ". This limitation on the power

to discipline, discharge and lay off employees, however, merely implements but does not in the court's judgment extend the scope of sections XII and XIII of the agreement.

The sentence in section XIX which follows immediately seems to stress the purpose of the parties not to deprive the management of its normal right to determine business policy: " The enumeration of the management prerogatives stated above shall not be deemed to exclude other prerogatives not enumerated herein."

Nor does the concluding paragraph of section XIX weaken the unfettered right accorded to the management by the agreement to formulate business policy. While this concluding paragraph declares that the article is not to be interpreted by the employer in a manner contrary to the terms or spirit of the agreement, it continues — " Any claim of discrimination on the part of World in the application of this section may be taken up under the provisions of sections ' XV ' and ' XVI ' hereof." This final sentence makes it clear that the parties intended that the management should not be permitted to invoke its prerogatives in justification of a prohibited discrimination and that an asserted discrimination was subject to the grievance machinery and arbitration. Reading the agreement as a whole, nothing is to be found in it which entitles the union to treat as an arbitrable dispute one arising from the exercise by the employer in good faith of its right to make a change in the scope or method of operation of its business.

The employer has made a detailed and circumstantial statement of the business reasons which prompted it to discontinue its wired music programing department and to farm out among independent contractors the work theretofore done on its own premises by this department.

The petitioner has not presented any proof which can be said to raise a substantial issue in respect of the facts adduced by the employer, nor is the employer's good faith impugned. While the petitioner throughout characterizes the abandonment of the department as a prohibited layoff, the petitioner has offered no proof in support of this characterization. In the absence of such proof the characterization cannot convert what the facts abundantly establish to be a determination in good faith of a matter of business policy into something else.

The court must not be understood to hold that if the employer's good faith were put in issue by facts, as distinguished from unsupported charges, a case for arbitration might not be made

out. All the court holds is that on this record the union has not met the employer's statement by any proof which creates an issue either on what the employer has done or on its good faith in doing so. The petitioner does not show that there was a layoff or discharge in the sense in which these terms were used in the agreement, nor that the employees in the discontinued department were released in a discriminatory or other manner contrary to the provisions of the collective agreement.

In final analysis the petitioner's position is a challenge of the employer's right to discontinue the department in the absence of attack on its good faith. The parties have not by the collective agreement committed the power to dispose of such a controversy to an arbitrator.

It is settled that unless a dispute is, by the terms or fair implication of a collective agreement, within the scope of an arbitration clause, there is no right to have the dispute arbitrated. (*Matter of Int. Assn. of Machinists* [*Cutler-Hammer, Inc.*], 271 App. Div. 917, affd. 297 N. Y. 519; *Matter of Belding Hemingway Co.*, 295 N. Y. 541; *Matter of Graphite Metallizing Corp.* [*De Rosa*], 271 App. Div. 839; *Matter of Strauss Stores Corp.* [*Local 830*], 189 Misc. 428; *Matter of Towns & James, Inc.* [*Fed. Labor Union*], 183 Misc. 181.)

While there are differences between the language of the collective bargaining agreement between the parties to this proceeding and the agreement considered by Mr. Justice GREENBERG in the *Twentieth Century-Fox Film Corp.* v. *Screen Publicists' Guild* (78 N. Y. S. 2d 178) the considerations which led to the conclusion in that case apply in large measure to the present case. The court is constrained to hold that the dispute is not arbitrable under the agreement. The motion to compel arbitration is, therefore, denied.