**LOCAL LODGE 2040, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, International Association of Machinists, AFL–CIO, Robert H. Brown, et al., Plaintiffs-Appellants,**

v.

**SERVEL, INC., a Corporation, Defendant-Appellee.**

**No. 12580.**

United States Court of Appeals Seventh Circuit.

June 24, 1959.

Sydney L. Berger, Evansville, Ind., Plato E. Papps, Washington, D. C., for appellants.

Walter J. Cummings, Jr., Chicago, Ill., Isidor Kahn, Evansville, Ind., Newton D. Crane, New York City, Harry P. Dees, Willard C. Shrode, Evansville, Ind., Kenneth F. Burgess, Chicago Ill., for appellee.

Before DUFFY, Chief Judge, and HASTINGS and KNOCH, Circuit Judges.

HASTINGS, Circuit Judge.

This action was brought in the district court by appellants, two labor unions, Local Lodge 2040, International Association of Machinists, AFL-CIO, and International Association of Machinists, AFL-CIO (the unions), and Robert H. Brown and a large number of employees of defendant, on their own behalf and for all other employees similarly situated (the employees), against defendant, Servel, Inc. (Servel), appellee. The unions are the representative of the production and maintenance employees of Servel for purposes of collective bargaining. A collective bargaining agreement (the agreement) was entered into between the unions and Servel on April 25, 1957.

The unions, as the collective bargaining representative of the employees and on their behalf, invoked jurisdiction of the court under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185. The employees asserted jurisdiction based upon diversity of citizenship. The complaint charged a breach of the agreement and sought a declaratory judgment that the agreement was then in force and a mandatory injunction ordering Servel to allow its employees to exercise pension and insurance rights provided for therein. It also demanded judgment in favor of the employees on their claims for wages arising out of holiday pay alleged due them for Christmas Day, 1957, and vacation pay for the year 1958.

Servel moved to dismiss the complaint as to all plaintiffs. The district court granted such motion as to the unions for want of federal jurisdiction and overruled it as to the individual plaintiffs, the employees. Treating the motion to dismiss as to the individual plaintiffs as a motion for summary judgment, and after considering the pleadings, a stipulation and the several depositions and affidavits offered by all parties, both in support of and against the motion, the trial court

made findings of fact and entered an order and declaratory judgment that the agreement was in force but interpreting it contrary to plaintiffs' contentions, and granted Servel's motion for summary judgment as to all individual plaintiffs, except Maston Wright, whose claim for certain insurance benefits will proceed to trial. This appeal is taken from such order and judgments of dismissal and for summary judgment.

In their complaint appellants alleged that among certain rights and privileges conferred upon the employees by the agreement [1] were the following:

"A. Employees, who completed three months of service with the defendant, Servel, Inc., acquired seniority. * * *

"B. Employees, who were laid off, retained their seniority for a period of time ranging from at least 12 months to 24 months, depending upon the amount of their seniority at the time of their layoff. * * *

"C. All employees who reached the age of 65 years, while they had seniority with Servel, Inc. were granted the right to retire and receive a pension in accordance with the pension plan of Servel, Inc. which was not subject to modification during the life of the Agreement. * * *

"D. Employees who had earnings during the two weeks immediately prior to Christmas Day, 1957, were granted holiday pay for said day. * * *

"E. Employees with six months seniority as of January 1, 1958, who worked 350 or more hours during 1957, were granted vacations with pay of from 1 to 3 weeks, depending upon the number of hours they worked in 1957, and the length of their seniority. * * *

"F. All employees were given group insurance, including life insurance, accidental death and dis-memberment insurance, weekly benefit, sickness and accident insurance and hospital and surgical insurance. * * *

"G. Employees who were laid off, but who retained their seniority, were given the right by said group insurance plan to continue said insurance.

"H. Employees who were disabled so that they could not work, were granted by said insurance plan a period of continuation of life insurance, depending on their seniority at the time of their disability."

Appellants further alleged that these rights were part of the wages paid to the employees for work performed for Servel; that all of such employees have attained seniority pursuant to the agreement and were entitled to such benefits; that payment of these benefits had been refused by Servel and that such unpaid benefits were now wages due the employees. It was also alleged that, on December 20, 1957, Servel attempted to discharge all employees in violation of the agreement, and this alleged breach was the basis of the relief sought.

The evidence in the record shows that, on December 20, 1957, Servel had completely discontinued all of its manufacturing operations at its plant in Evansville, Indiana where the employees had been employed. Prior to that date Servel had disposed of portions of its business and all but nine of its employees who are plaintiffs herein had been on a laid-off status for some time since their services were not needed. On or about December 20, 1957, each of the employees received a letter from Servel notifying them that:

"Servel, Inc., has completely discontinued all of its manufacturing operations.

"For the above reason, you are hereby regretfully notified that your employment with Servel, Inc., is permanently terminated and you are

1. The collective bargaining agreement was made a part of the complaint.

discharged effective December 20, 1957."

At the time it sent out this letter of discharge, Servel had completed arrangements for the sale of the last division of its business in Evansville. Although all of the plaintiff-employees had more than five years seniority, each of them was discharged prior to his sixty-fifth birthday, which is the year in which employees would first be eligible for any pension. No individual plaintiff was employed by Servel on Christmas Day, 1957, and none of them actually performed services for Servel in 1958.

It further appears from the record that, when Servel first began to dispose of portions of its business in 1956, the jobs of the affected employees were permanently discontinued and such employees were given permanent layoffs with their various rights under the agreement being continued in effect. It was not until Servel had completely closed all of its manufacturing operations on December 20, 1957 that the employees were discharged and such rights were terminated. There is no dispute as to continuing insurance benefits for employees who, at the time of their discharge, were disabled so they could not work, except with respect to plaintiff, Maston Wright.

Appellants contend that the employees were discharged in violation of Section 185 of the agreement which provides that they "*may be* disciplined or *discharged only for just cause.*" (Emphasis added.) However, the district court found that their discharge did not violate the agreement, but "was solely by virtue of the right to manage the business and to direct its employees reserved in the defendant, Servel, Inc., including the right to discontinue all its manufacturing operations when it saw fit * * *." Section 15 of the agreement provides that: "The

management of the business of the Company and the direction of its employees are the exclusive responsibilities of the Management, except as expressly modified by the terms of this Agreement." Appellants concede Servel's right to discontinue its manufacturing operations and to terminate the services of its employees when they are no longer needed. They contend, however, that Section 185 of the agreement modifies Section 15 and that such discontinuance is not "just cause" for discharge and not grounds for terminating benefits payable under the agreement.

## I.

Does Section 301(a) of the Labor Management Relations Act of 1947 confer federal jurisdiction on the district court to entertain this action by the plaintiff unions? [2]

We have already set out the rights of the employees as alleged in the complaint. The only allegations in the complaint relating to the unions are that (1) they are the representatives of the employees for the purpose of collective bargaining with respect to pay, wages, hours and all other conditions of employment; (2) that they entered into the subject agreement with Servel; and (3) that they bring this action as such collective bargaining representative to enforce the rights of the unions in the agreement. The relief prayed for is a money judgment in favor of the discharged employees, a declaration that the agreement is still in full force and effect and an order allowing pension and insurance rights to employees pursuant to the agreement.

The unions claim no pecuniary interest in the benefits the individual plaintiffs seek to recover, and they could not properly do so since these rights flow directly to the employees. They have not alleged the specific violation of any rights reserved to them under the contract, other

2. Section 301(a) provides:
   "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

than the right to challenge the discharge of the employees on December 20, 1957, as being without "just cause" in violation of Section 185 of the agreement. However, a fair reading of Sections 185 and 15 of the agreement, quoted in part above, shows that Section 185 was not intended to modify Section 15 which deals with management prerogative. Section 185 clearly applies to cases where an employee is subjected to discipline or discharge without just cause at which time the union is given the right to challenge the propriety or severity of such action pursuant to grievance procedures thereinafter set out. It has no application to the separation from employment that must inevitably follow the final closing of the phase of the business in which the employees were engaged.

The fact that the agreement is made a part of the complaint and the unions are parties to the agreement does not alter the theory of the complaint or change the nature of the action. We can come to no other conclusion but that this is an action for the recovery of individual benefits due employees, and, as such, is clearly within the scope of the holding of the Supreme Court of the United States in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1954, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510. In Westinghouse, a labor union brought suit in a federal district court against an employer to collect wages due its employee members, alleging the breach of a collective bargaining agreement. It sought a declaratory judgment interpreting the contract and a declaration of the rights of the parties, together with an accounting and judgment for the unpaid wages in favor of individual employees who were not parties to the suit. The Court held that Section 301 of the Labor and Management Rela-

tions Act did not authorize a labor union to maintain such an action in a federal court. Since, in the case at bar, appellants specifically plead in their complaint that the rights sought to be enforced for the employees "were a part of the wages and compensation" paid to them for their work, we are unable to distinguish the instant case from the situation found in Westinghouse as it relates to the union plaintiffs, and we hold that it is controlling here.

In United Steelworkers of America v. Pullman-Standard Car Manufacturing Co., 3 Cir., 1957, 241 F.2d 547, at page 552, the Third Circuit reviewed the holding in Westinghouse, together with subsequent cases in which federal courts had continued to entertain union actions under Section 301, and concluded:

"This body of recent decisions distinguishing Westinghouse points to the likelihood that the language used by the Chief Justice [in a concurring opinion] [3] was intended to draw a distinction which would serve to restrict jurisdiction under Section 301 to substantive matters which, whatever the personal interests involved, directly and primarily affect the complaining union as an organization, and procedural controversies about the proper administration of the collective bargaining process for which the union as bargaining agent is responsible. This view leaves suits to establish pension claims, like suits on wage claims, in the category of litigation 'to enforce * * * uniquely personal right[s] of an employee', which the Chief Justice found to be outside of the intended scope of Section 301. To us this is a plausible and satisfactory rationalization, and we adopt it."

3. In the concurring opinion in Westinghouse, in which Mr. Justice Clark joined, the Chief Justice said, 348 U.S. at page 461, 75 S.Ct. at page 501: "For us the language of § 301 is not sufficiently explicit nor its legislative history sufficiently clear to indicate that Congress intended to authorize a union to enforce in a federal court the uniquely personal right of an employee for whom it had bargained to receive compensation for services rendered his employer."

We agree.[4]

Appellants seek support for their position in our holding in United Protective Workers of America v. Ford Motor Co., 7 Cir., 1952, 194 F.2d 997. This reliance is misplaced. In the Ford Motor Company case we held that a labor union could maintain an action in federal court under Section 301(a) for the breach of a labor contract arising from the alleged wrongful dismissal of an employee. However, in that case the union predicated its action on the employer's refusal to recognize the union's demand " ' * * * that the grievance procedure provided in said collective bargaining agreement * * * be utilized as a means of attempting a settlement of the wrongful dismissal of plaintiff * * *.' " 194 F.2d at page 1001. This was a clear breach of the bargaining agreement and involved a right flowing directly to the union. There is no charge in the instant case that the unions sought to invoke or that Servel refused to submit to the grievance procedure set out in the agreement.

Jurisdiction under Section 301(a) is also urged in light of the holding in Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, which appellants claim modified the Westinghouse case. We do not agree. Lincoln Mills held that under Section 301(a) a union could have specific performance of a bargaining agreement to arbitrate a grievance dispute, the employer having refused such arbitration. It further held that substantive law to be applied in suits under Section 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. We find nothing here that modifies Westinghouse. Indeed, as Mr. Justice Douglas points out in

footnote 6, at page 456 of 353 U.S., at page 917 of 77 S.Ct. of that opinion: " * * * [the Westinghouse case] is quite a different case. There the union sued to recover unpaid wages on behalf of some 4,000 employees. The basic question concerned the standing of the union to sue and recover on those individual employment contracts. The question here concerns the right of the union to enforce the agreement to arbitrate which it has made with the employer."

We hold that Section 301(a) did not confer jurisdiction on the district court to entertain this action by the plaintiff unions and that the trial court did not err in dismissing the action as to them.

This holding is dispositive of appellants' claim that the unions and unnamed employees of Servel were denied due process of law in being deprived of an opportunity to be heard on any of the issues presented herein. The unions were not properly before the court and had no right to be heard. The unnamed employees were represented throughout the proceeding by the named employees. It should also be noted that unions offered proof in opposition to defendant's motions, were heard along with the individual plaintiffs and were represented by the same counsel.

## II.

Did the discontinuance of all manufacturing operations by Servel justify the discharge of all the individual plaintiffs on December 20, 1957, including those who had been previously laid off?

Appellants contend that when the employees were permanently laid off by Servel during the course of its discontinuance of its manufacturing operations that they then achieved the status of laid-off employees with two years seniori-

4. To the same effect see United Electrical, Radio & Mach. Workers of America v. General Electric Co., 1956, 97 U.S.App. D.C. 306, 231 F.2d 259, 261; Textile Workers Union of America v. Cone Mills Corp., D.C.M.D.N.C.1958, 166 F.Supp. 654, 657–660; Communications Workers of America, A.F.L.–C.I.O. v. Ohio Bell Telephone Co., D.C.N.D.Ohio 1958, 160 F.Supp. 822, 824, 825; Textile Workers Union of America, C.I.O. v. Bates Manufacturing Co., D.C.D.Me.1958, 158 F. Supp. 410, 412; Burlesque Artists Ass'n v. I. Hirst Enterprises, Inc., D.C.E.D.Pa. 1955, 134 F.Supp. 203, 204.

ty from the time of layoff as provided in the agreement. They also contend that this status gave such employees the vested right to maintain their group life insurance during the two years, their hospitalization insurance for one year, the right to certain wage benefits and the right to retire under the pension plan if they reached the age of 65 years during this two year period following layoff during which they retained seniority. They further argue that the discharge of the employees on December 20, 1957 was not for just cause, the employees having done nothing that was just cause for their discharge and that such action was therefore a clear breach of the agreement. We do not think this argument is well-founded. We have already indicated that we think Section 185 of the agreement providing for discharge "only for just cause" does not relate to the situation arising when the employer discontinues its manufacturing operations in which the affected employees were engaged.

Appellants cite several cases holding in effect that employees' seniority under a labor agreement and the rights appurtenant thereto are property rights which are entitled to protection, and that unilateral action of an employer in an attempt to deprive an employee of such rights and benefits in violation of a labor agreement is improper. United Protective Workers of America v. Ford Motor Co., 7 Cir., 1952, 194 F.2d 997; American Federation of Labor v. Western Union Tel. Co., 6 Cir., 1950, 179 F.2d 535; Nord v. Griffin, 7 Cir., 1936, 86 F.2d 481. These cases all concern the dismissal of an individual employee under circumstances not related to the employer discontinuing its manufacturing operations. Vallejo v. American R. Co. of Porto Rico, 1 Cir., 1951, 188 F.2d 513, also cited by appellants, deals only

with vested rights of employees to pensions upon discontinuance of an employer's business due to bankruptcy, and has no application here.

The discharge of employees by reason of discontinuance of business operations does not come within a provision of a collective bargaining agreement prohibiting an employer from discharging its employees except for just cause.[5] Servel's discharge of its employees under these circumstances was not for cause in the sense contemplated by the parties to the contract but was by virtue of the right retained by the employer in the agreement to the exclusive responsibility for the management of its business. Cf. Chicago & North Western Railway Company v. Order of Railroad Telegraphers, 7 Cir., 1959, 264 F.2d 254. We have been cited to no cases to the contrary.

Contrary to appellants' contention, we find nothing in the agreement providing for a *permanent* layoff status to these employees or giving vested rights to seniority for two years following their layoff. Seniority rights depend upon an employer-employee relationship; they do not guarantee such a relationship but merely define the rights of an employee when that status is in existence, and the right of seniority is not inconsistent with the right of an employer to discharge its employee. See Held v. American Linen Supply Co., 1957, 6 Utah 2d 106, 307 P.2d 210, 212.

We hold that the district court did not err in its finding that the discharge of the individual party plaintiffs on December 20, 1957 by Servel did not violate the collective bargaining agreement in issue.

### III.

Are the individual plaintiffs eligible for pension, holiday and vacation benefits under the collective bargaining agreement?

5 See Karcz v. Luther Manufacturing Co., Mass.1959, 155 N.E.2d 441, 445; B. F. Curry, Inc. v. Reddeck, 1949, 194 Misc. 527, 86 N.Y.S.2d 674, 676; Application of Berger, 1948, 191 Misc. 1043, 78 N.Y.S.2d 528, 530–531; Amelotte v. Jacob Dold Packing Co., 1940, 173 Misc. 477, 17 N.Y.S.2d 929, 933, affirmed 260 App.Div. 984, 24 N.Y.S.2d 134.

The district court found (1) that no employee of the class represented by the individual plaintiffs was eligible for pension benefits under Servel's pension plan because each such person was discharged prior to his sixty-fifth birthday; (2) that no such employee was entitled to receive holiday pay for Christmas Day, 1957 because no such person was an employee of Servel on that day as required by Section 89 of the agreement; and (3) that no such employee was entitled to vacation pay in 1958 because no such person was an employee of Servel with seniority on January 1, 1958 as required by Section 237 of the agreement.

In view of our disposition of the preceding issue under part II of this opinion, we hold that the district court did not err in such findings. We have examined the cases cited by appellants under this proposition and do not find them to be controlling. Our attention has been called to the fact that the agreement makes no provision for the accrual or proration of any of these benefits. Likewise, Section 18 of the agreement expressly provides that Servel's right to discipline or discharge employees shall not be affected by reason of any of the provisions of the pension plan, subject to the further provision that any employee *otherwise entitled* to receive benefits shall not be deprived of them by reason of such disciplinary action or discharge.

#### IV.

Are there any issues of material facts with respect to insurance benefits?

We have examined the record relative to the contentions of parties with respect to this issue. We need not burden this opinion with a recital of it. It is sufficient to say that, in our opinion, the court did not err in its findings as to the insurance benefits and that there are no issues of material facts with respect thereto, except as to Maston Wright. No contention as to Wright is raised in this appeal. Summary judgment was properly entered.

The judgment of the district court is

Affirmed.