Bernard S. Meter, J.
By this motion petitioner seeks a stay pursuant to section 1458 of the Civil Practice Act of respondent union’s demand for arbitration of nine stated questions. Prior to July, 1957 George Battray & Company, Inc., was an independent company engaged in the manufacture of potentiometers. On that date all of the outstanding stock of the company was purchased by Hardwick, Hindle, Inc. The employees and the union were advised of the changed relationship. The pre-existing collective bargaining agreement with respondent union had been extended for two years in June, 1957, and the business activities of Battray were carried on as before, except that on *736 September 30,1957, all of the assets of George Eattray & Company, Inc., were distributed to Hardwick. The Eattray corporation continued in existence, but wages were paid by check of “ George Eattray & Co., Division of Hardwick, Hindle, Inc.” When the collective bargaining agreement expired a new contract, dated July 1, 1959, was made. That contract was negotiated by Hardwick’s personnel manager, but as concluded is between “ George Eattray & Company, Inc., its successors and assigns” rather than “George Eattray & Co., Division of Hardwick, Hindle, Inc.” On June 27, 1960, HardAvick, Hindle, Inc., entered into a contract for the sale to Instruments for Industry, Inc., of all of the assets of its George Eattray & Company Division, including machinery, unfilled orders, patents, and the use of the name George Eattray & Co., Inc. It was agreed that petitioner’s name Avould be changed and it was further covenanted that “ for a period of three (3) years folloAving closing, Seller will not, directly or indirectly, either as owner, investor, stockholder, joint venturer or participant, engage in the business of manufacturing, assembling, distributing or selling of precision potentiometers, or any component part thereof, in the United States of America, Canada or Mexico.” On July 1, 1960, the employees Avere notified that as of 4:30 p.m. that date George Eattray & Co., Inc., was terminating operations and each was paid through July 1, 1960 and in addition was paid for accrued vacation.
The issues on Avhieh the union demanded arbitration Avere: (1) discharge of employees Avithout just cause in violation of article XV of the agreement; (2) failure to give notice of intention to move the plant as required by article I; (3) failure to provide employment rights at the new or relocated plant in Adulation of article I; (4) failure to make proper holiday payments as required by article VIII; (5) lockout in Adolation of article XXIX; (6) failure to require the purchaser to assume the collective bargaining agreement; (7) failure to make proper payments to pension fund; (8) failure to make proper payments to welfare fund; and (9) failure to pay dues to the union. Issue 7, 8 and 9 have been adjusted by the parties and are no longer in question.
Article XXII of the agreement establishes procedure Avith respect to “ any dispute, difference or grievance except as otherwise provided herein [Avhieh] shall arise under this agreement ’ ’ and article XXIII provides for submission to arbitration of “ disputes, differences and grievances * * * Avhieh have not been satisfactorily settled after folloAving the grievance procedure hereinabove set forth ”. Article XXIII further *737 provides: ‘ ‘ The parties agree that the grievance and arbitration procedure set forth in Articles XXII and XXIII of this agreement shall be the sole and exclusive method of settling disputes between them concerning the interpretation or application of any provision of this agreement.” It is clear, therefore, that for a dispute to be arbitrable under the agreement it must arise under the agreement and concern the interpretation or application of a provision of the agreement. The arbitration provisions under consideration in this case are not sufficiently broad to encompass issues merely related to or connected with the collective bargaining agreement. (See Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76, 80; Matter of Teschner [Livingston], 285 App. Div. 435, affd. 309 N. Y. 972; Matter of General Warehousemen’s Union [Glidden Co.], 10 Misc 2d 700.) Since the agreement commits interpretation to the arbitrators, however, it is they, not the court, who, with respect to any dispute properly within their cognizance, determine questions of both law and fact. (Matter of Carey [Westinghouse Elec. Corp.], 6 A D 2d 582, affd. 6 N. Y. 2d 934; Matter of Spectrum Fabrics Corp. [Main St. Fashions], 285 App. Div. 710, 714, affd. 309 N. Y. 709; Matter of Leonard Elec. Co. [Local 419], 12 Misc 2d 304.)
The question whether a dispute is within the arbitrators’ cognizance is, however, to be determined under either section 1450 or section 1458 of the Civil Practice Act, for there is no “failure to comply” within the meaning of those sections if there is no bona fide dispute. (Matter of Terminal Auxiliar Marítima, S. A. [Winkler Credit Corp.], 6 N Y 2d 294, 299.) There is no bona fide dispute where ‘ ‘ no real ground of claim ’ ’ is advanced on the facts (Matter of General Elec. Co. [Electric, etc. Workers], 300 N. Y. 262; Alpert v. Admiration Knitwear Co., 304 N. Y. 1) or where under the “ only tenable construction ” of the agreement no default has occurred (Matter of Sarle [Sperry Gyroscope Co.], 4 A D 2d 638, affd. 4 N Y 2d 917; Matter of Potoker [Brooklyn Eagle], 2 N Y 2d 553, 559). The burden of showing such a dispute is upon the party demanding arbitration. (Matter of Essenson [Upper Queens Med. Group], 307 N. Y. 68, 72; Matter of General Warehousemen’s Union, supra.)
Both section 1450 and section 1458 require that “ evidentiary facts raising a substantial issue ’ ’ be set forth in the moving papers; conclusory statements are, therefore, insufficient (Matter of Minkin [Halperin], 279 App. Div. 226, 231, affd. 304 NT. Y. 617; Matter of Essenson, supra; Matter of New York Mirror [Poioker], 5 A D 2d 423, 428). Whether the facts presented *738 must rise to the dignity of a prima facie case (see Matter of Essenson, supra, p. 72 and the dissenting opinion of Mr. Justice Bbeitel in Matter of New York Mirror, supra, p. 436), or, the problem being one of issue finding, the standards applicable to motions for summary judgment (see, e.g., Falk v. Goodman, 7 N Y 2d 87) are to be applied, need not now be determined. Even if the lesser standard be applied, the court concludes that except as to issue 4, the union has failed to set forth any facts showing an arbitrable dispute.
An agreement not to discharge employees without just cause does not preclude an employer from discontinuing business in good faith. (Matter of Otis Elevator Co. [Carney], 6 N Y 2d 358; Amelotte v. Dold Packing Co., 173 Misc. 477, 482, affd. 260 App. Div. 984; Matter of Curry [Reddeck], 194 Misc. 527; Local Lodge 2040, hit. Assn, of Machinists v. Servel, 268 F. 2d 692, 699, cert, denied 361 U. S. 884; see Matter of 20th Century-Fox [Screen Guild], 17 Misc 2d 233; Matter of Berger [World Broadcasting System], 191 Misc. 1043, affd. 274 App. Div. 788.) On parallel reasoning the good faith termination of an employer’s business is not a violation of the lockout clause. (See Matter of Kosoff [“ Jones ”], 276 App. Div. 621, affd. 303 N. Y. 663.) Except for the argument that the sale to Instruments for Industry, Inc., was not an arm’s length transaction, nothing is presented to substantiate that petitioner has moved or relocated its plant. With respect to issues 1, 2, 3 and 5, therefore, there can be no dispute except as to good faith. Where ‘ ‘ under the circumstances of the case enough has been shown * * * to create an arbitrable dispute ” concerning good faith, that issue is for the arbitrators not the court (Matter of Otis Elevator, supra, p. 362; Matter of Sarle, supra; Matter of Saks & Co. [Saks Fifth Ave.], 9 AD 2d 325; Matter of Carey [General Elec. Co.], 4 A D 2d 462). Respondent’s problem in the present case is that, faced with the facts that there is no relationship between Hardwick or Rattray and Instruments for Industry, Inc., direct or indirect, other than that created by the sales contract between them and that that sales contract prohibits petitioner from engaging in the potentiometer business, no matter by what firm the instruments are manufactured, for a period of three years, respondent can do no more than state that the union has had a prior experience with Instruments for Industry, Inc., involving the removal of its plant, suggest that “ The Union will seek an examination before trial, in order to establish the true relationship between the Petitioner and IFI ” and argue that the sale of unfilled orders, the sale to and apparent continued use by IFI of the name “ George Rattray & Co., Inc.”, and the hiring *739 J>y I FI of certain supervisory and engineering personnel formerly employed by Eattray raise an arbitrable issue. Considered separately or taken together, those factors do not suggest any relationship other than seller and purchaser. In the absence of evidentiary facts indicating some relationship between Hardwick or Eattray and IFI, each of the factors relied on by the union is simply irrelevant.
But the union argues Matter of Otis Elevator (supra) is on all fours and requires that the issue of good faith be left to the arbitrators. In that case the employer discharged certain employees who did porter work, claiming that it had contracted with an outside corporation to perform the work. The Court of Appeals recognized that an employer is not prevented by a collective bargaining agreement from discontinuing an operation and letting its performance out to an independent contractor. It reversed the granting of a stay of arbitration, nonetheless, holding that “ under the circumstances of the case enough has been shown in our judgment to create an arbitrable dispute concerning whether, at the time in question, these porter employees [of the independent contractor] were really working for respondent” (pp. 362-363; emphasis supplied). In that case, however, the union president’s affidavit showed that only part of the porter job involving the office area of the plant had been taken from the union employees, that the work was being done by the independent contractor’s employees in the same manner as porters in the employer’s direct employ, with the same equipment and supplies as porters in employer’s direct control, and subject to direct or indirect control and supervision of the employer regarding work detail. The Otis Elevator decision, therefore, is not a departure from the requirement that a showing of evidentiary fact must be made, although it could be argued that it is a departure from Matter of Essenson (307 N. Y. 68, supra) requirement of a prima facie case.
Hone of the other cases dealing with discontinuance of the business of a company, or a department or plant maintained by a company, support the union’s contention. In Matter of Teschner (285 App. Div. 435, affd. 309 N. Y. 972, supra), it was shown that on the day the employer closed down, a new corporation by which he was employed began business, that the name of the corporation was composed of the initials of his children, and that the merchandise in the new place was the same as in the old; in Matter of Acme Backing Gorp. (District 65 D.P.O.W.A.) (2 N Y 2d 963), the discontinued plants’ operations were transferred to an affiliated corporation and the contract included a “ successors in interest ” clause; in Matter *740 of Friedstrass Co. (Livingston) (16 Misc 2d 121, affd. 8 A D 2d 780) the business was sold to another subsidiary of a common parent corporation; in Matter of Great Atlantic & Pacific Tea Co. (Crotty) (23 Misc 2d 560) the fact that the employer in previous negotiations offered to refrain from discontinuing the department if the union would give up certain claims was held sufficient to present “a genuine issue of fact that creates an arbitrable dispute;” in Glaessgen v. Allen Business Machs. (N.Y.L.J., Aug. 26, 1960, p. 3, col. 7) the same telephone number was used, bills continued to be sent on. the employer’s billheads, and it was shown that the business of the new corporation was in all respects the business performed by the employer prior to the alleged cessation of its business. On the other hand, in the following cases involving dissolved corporations or discontinued business and in which good faith was not put factually in issue, it was held that there was no arbitrable dispute; Matter of Kosoff (276 App. Div. 621, affd. 303 N. Y. 663, supra); Matter of Lloyd (Hollander & Son) (17 Misc 2d 180, affd. 8 A D 2d 801); Matter of General Warehousemen’s Union (10 Misc 2d 700, supra); Matter of Curry (194 Misc. 527, supra); Matter of Berger (191 Misc. 1043, affd. 274 App. Div. 788, supra). Since in the instant ease nothing more is presented on the question of good faith than “ bare-faced verbalization ” (Matter of New York Mirror, 5 A D 2d 423, 437, supra) issues 1, 2, 3 and 5 present no arbitrable dispute.
With respect to issue 6, the union’s argument that pétitioner was obligated to require IFI to assume the collective bargaining agreement is predicated not upon any express provision in the body of the agreement but upon the description of the employer in the opening sentence of the agreement as “ George Rattray & Company, Inc., its successors and assigns ”. Petitioner argues from Matter of Klinger v. Krum (259 App. Div. 309) that IFI is not a “ successor ” or“ assign,” but the court concludes that, were there a successor in interest clause in the contract itself, an arbitrable dispute would, under the holding of Matter of Acme Backing Corp. (2 N Y 2d 963, supra), be present. There is, however, no such clause, and under well-settled rules of contract law, the reference to “ successors and assigns” in the recitals of the contract, while available to explain any ambiguity in the contract, forms ho part of the contract itself and may not be used to create an ambiguity. (Wilson v. Towers, 55 F. 2d 199, 200; Burr v. American Spiral Spring Butt Co., 81 N. Y. 175, 178; Bintz v. City of Hornell, 268 App. Div. 742, 747, affd. 295 N. Y. 628; Ross v. Ross, 233 App. Div. 626, 635, affd. 262 N. Y. 381; Industrial Development *741 Foundation of Auburn v. United States Hoffman Mach. Corp., 11 Misc 2d 625, 633, affd. 8 A D 2d 579.) Under the “ only-tenable construction ’ ’ of the agreement, therefore, there is no arbitrable dispute on issue 6.
With respect to issue 4, relating to holiday pay, the court concludes, however, that an arbitrable dispute is present. The agreement provides for stated holidays including Independence Day and further that “ There shall be one additional holiday on a ‘ floating ’ basis to be assigned as part of a long holiday weekend ”. As above noted, petitioner terminated the employment of all employees on July 1, 1960 at 4:30 p.m. and paid accrued vacation pay which, in substantially all cases, was for a period of 10 working days. Notwithstanding the provision of section D of article XIX of the agreement that “If a paid holiday falls during an employee’s vacation, such employee shall receive an extra day’s vacation with pay,” the court concludes that there is no arbitrable dispute concerning the July 4 holiday. First, the issue as framed concerns only holiday payment under article VIII, and does not encompass the question of pay for July 4 under article XIX. Second, and conclusive of the question, is the clear distinction made in article XIX between “ vacation ” on the one hand and “ vacation pay ” on the other. The employees are entitled under section F of article XIX to “ their accumulated vacation pay ” on termination. They were not on vacation as of July 1, 1960; rather they received vacation pay on that date because their employment was then terminated. Section D, therefore, is simply not applicable. (See Local Lodge 2040, Int. Assn, of Machinists v. Servel, 268 F. 2d 692, 699, cert, denied 361 U. S. 884, supra.) With respect to the “ floating” holiday, there is, however, an arbitrable dispute. Section C of article VIII provides that employees shall receive one day’s pay for any holiday. The ‘ ‘ floating ’ ’ holiday could be taken at any time during the year. The right to the holiday and to the pay for it accrued on the first day of the year. It is for the arbitrators to say whether under the agreement the employees were entitled to be paid upon termination for the floating holiday. That the union, in the expectation that business was to continue, may have agreed upon July 11 as the floating holiday has no relevance to the consideration whether an arbitrable dispute concerning the issue exists. Settle order on notice granting the stay except as to issue 4.